# RACHEL G. VOGEL v. NASH-FINCH COMPANY.[1]

February 28, 1936.

No. 30,598.

*Grady & Grady* and *McIntyre, Burtness & Shaft,* for appellant.
*Dell & Rosengren,* for respondent.

HOLT, JUSTICE.

Plaintiff obtained a verdict against defendant for the wrongful
death of her intestate, Joseph W. Vogel, her husband. Defendant

[1] Reported in 265 N. W. 350.

appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

Defendant's main contentions are: (a) That if the negligence of Fred Johnson, defendant's servant, was the proximate cause of Vogel's death, such negligence was conclusively shown to have occurred outside the scope of Johnson's employment; and (b) Vogel's contributory negligence appears as a matter of law. If either proposition is correct defendant is entitled to judgment notwithstanding the verdict for it moved for a directed verdict.

The defendant does not contend that the evidence did not justify the jury in finding that the negligence of Johnson proximately caused or contributed to cause Vogel's death; but it insists that the evidence is conclusive that when Vogel received his fatal injury Johnson was not within the scope of his employment and was not engaged in furthering defendant's business. The evidence viewed in a light favorable to plaintiff's contention may be thus stated:

Defendant wholesales merchandise by means of traveling salesmen. One of these was Fred Johnson. He provided his own car but was paid four cents per mile traveled. He started from defendant's wholesale house at Crookston Monday mornings with a stock of goods of the value of from $300 to $400 and called on the trade in his territory, which extended on trunk highway No. 32 to Warroad, usually returning by Wednesday night. Defendant's manager at Crookston testified: "Each salesman, in addition to salary, is paid actual expenses for room and board and mileage for his car; while I fix the territory, the route and schedule followed therein by the salesmen are left to the salesmen." The Warroad trip included the villages of Holt, Middle River, Strathcona, Greenbush, and Warroad. He would sell and deliver to his customers from the stock he carried in addition to taking orders for delivery by other means. Johnson had been on this route some three years prior to Monday, July 16, 1934. Before the Hallquist hotel at Middle River burned he stayed there Monday nights. Strathcona, nine miles north of Middle River, was usually visited during the afternoon or evening, Johnson returning to Middle River for the night, so that in the mornings he could pass on north without

stopping at Strathcona. There was no hotel at the latter place. After the Hallquist hotel burned he generally stopped at Greenbush, nine miles north of Strathcona, where the hotelkeeper registered a room for him for Monday nights. Mrs. Hallquist had rebuilt her hotel at Middle River. Both Vogel and Johnson had supper there on July 16, 1934. The rooms appear to have been ready, with the exception of electric lights. Johnson had seen them and had selected a room, but made no arrangement for that Monday night. Some time after supper he promised to call on a customer at Strathcona that evening. On this trip he also had with him one Sherwin, a salesman for another wholesale concern. Vogel was also a traveling salesman, who on his trip, driving a Buick coupé, had reached Middle River. Vogel and Johnson were acquainted. Johnson considered himself a singer. About nine o'clock he saw Katherine Hjertos, a young woman of Middle River, whom he knew to be a singer, and one Miss Anderson, walking by the post office. He hailed them and then took them to Vogel and Sherwin and introductions were had. Johnson proposed singing. The young ladies did not think it proper to sing outdoors within the village limits. The five were thereupon taken in Vogel's car about a mile and a half outside the village, where singing was indulged in for about an hour, and then they returned to the village. Johnson thereupon suggested going to Strathcona. The others consented. Johnson took his car, a sedan, and with him rode Sherwin and Miss Hjertos. Vogel with Miss Anderson followed in the Buick. When they arrived at Strathcona at 11:30, Johnson's customer, who had requested a call, had retired; but Johnson saw another customer on the street, who opened his place and all entered. There is some evidence that Johnson tried to sell him some goods, but the customer concluded that he needed none. The party had three or four glasses of 3.2 beer each, remaining in the place about an hour, then started back for Middle River, Johnson leaving three or four minutes ahead. About two miles south of Strathcona he stopped, stepped out of the left front door and walked slowly to the rear, with his arm extended. Sherwin stepped out on the right side and walked to the rear. He claims that he walked some 18

feet to the rear of the car, then, seeing the Buick approaching at great speed, he jumped into the westerly ditch. Miss Anderson, testifying that she was looking ahead, saw neither Johnson, nor his car, nor its taillight until within 30 feet thereof, when Johnson stepped out toward the center of the road. At the same time Vogel applied the brakes and swerved to the left, but too late. Johnson was struck and hurled or dragged toward the easterly ditch, into which ditch went the Buick car, the left front wheel coming up to the top of the four-foot easterly bank of the ditch. Miss Anderson received minor injuries. Johnson's car was driven forward and into the westerly ditch. Miss Hjertos, who had remained in the front seat of the Johnson car, was not injured. She and Sherwin went to a near farmhouse for aid and called a doctor. When the doctor arrived Vogel was near death and expired before brought to Middle River.

The testimony of defendant's manager that Johnson had complete freedom as to his working schedule; that he could call on the trade at the convenience of himself and customers—on stores chiefly in daytime, on drink and amusement places during evenings; together with the undisputed facts that he was upon the road and territory assigned to him and had the goods of defendant for sale in his car; that he went to Strathcona this night to sell defendant's goods to a customer who had requested Johnson to call; and that he usually made Strathcona on Monday evenings should be evidence enough to carry the question to the jury as to whether Johnson was within the scope of his employment when Vogel met his death. Of course there is also a basis for finding that Johnson had wholly abandoned his employer's business and was solely in the pursuit of his own desires on the trip to Strathcona and back. But as we read the evidence it cannot be said as a matter of law that he had done so. Defendant does not contend that if Johnson stopped his car in the lane of travel and took a position in the rear thereof so as to hide the taillight from a following car, as the jury could find, the conclusion was not justifiable that he was negligent and that such negligence proximately caused Vogel's death. Defendant calls attention to McCarty v. Twin City E. & P. Assn.

172 Minn. 551, 216 N. W. 239, an industrial accident claim, but it is to be noted that the triers of fact there found that the employe was not within the course of his employment when injured. Loucks v. R. J. Reynolds Tobacco Co. 188 Minn. 182, 246 N. W. 893, is a case where this court held that the evidence was conclusive that the servant had departed not only from the territory assigned him, but was acting contrary to the master's instruction, and hence both the jury and the trial court erred—the jury in finding that the employe was in the employer's business when the negligent act occurred, and the court in not granting judgment *non obstante*.

Defendant's counsel forcefully argues that the record as a matter of law establishes that Vogel's negligence caused or contributed to his death. It is insisted that this case is ruled by Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42. The plaintiff's verdict in that case was based on the testimony of the driver of the sedan which, during a clear summer evening, came into collision with the rear of the defendant's truck, stalled on the highway without a burning tail-light. He was traveling about 30 miles an hour. He claimed he could see only 25 to 30 feet ahead of him by his headlights. A mechanic testified the headlights were sufficient to illumine a space of 150 feet ahead. By a divided court the driver was held guilty of contributory negligence as a matter of law. In the case at bar the highway was straight and level, the roadway being of black tarvia 32 feet wide. The night was exceedingly dark, though not cloudy. Photographs of the road received in evidence show small timber on both sides of the road which might affect the visibility of objects on the road no higher than the timber. Johnson's car was black or blue-black. He was dressed in dark clothes. Vogel, the driver, is dead, and plaintiff has the benefit of the presumption that he was in the exercise of due care when he met death. The jury could conclude that the taillight of the parked Johnson car, though burning, was obscured or hid by Johnson standing between it and the oncoming Vogel car. Miss Anderson's testimony is that Johnson and his car were not discovered by the occupants of the Buick until within 30 feet thereof. There is no evidence as to whether or not the headlights of the Buick car complied with

1 Mason Minn. St. 1927, § 2720-50, but it may be claimed that they did not, since the brake marks on the pavement indicate that Vogel was within less than 50 feet of the car or of Johnson when Vogel noticed them and applied the brake, or else that he was negligent in failing to keep a proper lookout, knowing that the Johnson car was somewhere in the road ahead. It is true that it was said in Faber v. Herdliska, 194 Minn. 321, 260 N. W. 500, that the presumption of due care must yield to evidence direct or circumstantial. Here the testimony of Miss Anderson corroborates the presumption. That of Sherwin tends to rebut it. But the jury could well find that Sherwin's testimony was so contradicted and impeached as not to be worthy of belief. The circumstantial evidence is not conclusive and is of such nature as to lend itself to different inferences. It may be well to consider what a reasonably prudent driver would look for, driving along such a road in the nighttime, when he knew that a car had preceded him some three or four minutes, equipped with a burning taillight. He might well have relied on the burning taillight of the preceding car showing up at least 500 feet ahead of him. He could not anticipate that Johnson would do such a negligent act as to stop his car in the lane of travel and then place himself between the taillight and cars approaching from the rear. In considering the contributory negligence of one injured or killed through the alleged negligence of a defendant, it must not be lost sight of that each may act on the assumption that the other is in the exercise of ordinary care and observing the law until the contrary appears. The defense of contributory negligence is generally an issue of fact and not to be determined as a matter of law unless the evidence is such that reasonable men can draw but one conclusion. The authorities in this state where the one charged with contributory negligence is dead are to be found under 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 2616. In Jasinuk v. Lombard, 189 Minn. 594, 250 N. W. 568, the effect of the presumption and the evidence to overcome it are adequately treated. It seems to us that, in view of all facts and circumstances surrounding this tragedy, the defense of Vogel's contributory negligence was one of fact for the jury to solve.

It is conceded that under decisions of Iowa, Michigan, North Dakota, and Wisconsin the defendant would be entitled to judgment on the ground of Vogel's contributory negligence. In Iowa and Michigan there is a statute which provides that "no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead." Hence, whether from want of light or other cause, the driver of a car who strikes an obstruction in front violates the statute and is held guilty of contributory negligence. In Iowa the law also is that one injured by another's negligence must prove not only such negligence but his own freedom from contributory negligence in order to recover. Hart v. Stence, 219 Iowa, 55, 257 N. W. 434, 97 A. L. R. 535; Shannahan v. Borden Produce Co. 220 Iowa, 702, 263 N. W. 39; Angstman v. Wilson, 258 Mich. 195, 241 N. W. 909; Thompson v. Southern Michigan Transp. Co. 261 Mich. 440, 246 N. W. 174; Garrison v. City of Detroit, 270 Mich. 237, 258 N. W. 259. Defendant calls attention also to Bagan v. Bitterman, 65 N. D. 423, 259 N. W. 266, decided on the theory that the court has adopted what it terms the rule of safety, as above quoted from the statutes of Iowa and Michigan. In Wisconsin there is now a statute similar to those in Iowa and Michigan. Kleist v. Cohodas, 195 Wis. 637, 219 N. W. 366, but the court rather intimates that the safety rule mentioned was adopted in Lauson v. Town of Fond du Lac, 141 Wis. 57, 123 N. W. 629, 25 L.R.A.(N.S.) 40, 135 A. S. R. 30, before the statute was enacted. From defendant's brief we cite the following from our decisions in support of the court's action in submitting the defense of contributory negligence to the jury: Knutson v. Farmers Co-op. Creamery, 180 Minn. 116, 230 N. W. 270; Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630; Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605; Brown v. Raymond Bros. M. T. Co. 186 Minn. 321, 243 N. W. 112; Martin v. Tracy, 187 Minn. 529, 246 N. W. 6.

One assignment of error is that the evidence does not support the verdict and that the verdict is contrary to law. From the brief and oral argument we understand that nothing more is urged as ground for a new trial than was presented on the issues of de-

516

fendant's negligence and Vogel's contributory negligence. We consider there is evidence to support the verdict and that it is not contrary to law.

A new trial is asked for failure to give this requested instruction:

"To come within the scope of the employment, I charge you that it is not necessary that the service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability upon the employer, the inference must be permissible that the trip would have been made though the private mission had been cancelled. If the work of the defendant, the Nash-Finch Company, created the necessity for this trip on the night in question, then Mr. Johnson was in the course of his employment, even though he was at the same time serving some purpose of his own. If, however, the journey from Middle River to Strathcona and back to Middle River would have gone forward though the business errand had been dropped, and would have been cancelled upon the failure of the private purpose, though the business errand was undone, then the travel was personal to Mr. Johnson, and the defendant Nash-Finch Company is not responsible for Johnson's acts on such journey."

The requested instruction is almost verbatim the language of Mr. Chief Justice Cardozo in Matter of Marks v. Gray, 251 N. Y. 90, 167 N. E. 181, an appeal from a compensation award under the workmen's compensation act. The arguments and tests used in judicial opinions, even though good law, are not written for the purpose of being used as instructions to a jury. The trial court, knowing the capacity of the jury, instructed relative to the same subject covered by the requested instruction very fully. Among other matters, the jury, in determining whether Johnson was within the scope of his employment when the collision took place, were directed to consider these questions:

"What was Mr. Johnson employed to do by the Nash-Finch Company? Was he, at the time of the accident, doing something within the range of the contract of hiring? What time did the accident occur? Was he at liberty from his employment and pursuing his

own ends on this trip to Strathcona and back, or did he make the trip on his master's business? Was he off or on duty at the time and place of the accident? If there had been no business for him to engage in at Strathcona, would [he] have made the trip anyway? If the pleasure trip had been abandoned, would be have made the trip to Strathcona and returned at the time of the accident for business reasons?"

The court then called attention to the evidence bearing on the questions put; and, with reference to the singing trip, stated that this rule should be kept in mind:

"That should there be, on the part of the servant, a temporary abandonment of his employer's service, the employer again becomes liable for the servant's acts when the servant once more begins to act in the employer's business; and whether or not there was in this case a resumption of the employer's business, if it had been temporarily abandoned, must be determined by you from all the facts and circumstances in the case."

Then the court stated that if Johnson intended to spend the night at Middle River and if the trip to Strathcona was one within the course and scope of his employment, then the trip from Strathcona to Middle River was within the course of his employment; but if he intended to work Strathcona on Monday night and spend the night at Greenbush, and merely was going to Middle River for the purpose of returning one or more of his companions, he was not within the scope of his employment. It was also stated that if they found from the evidence that Johnson made this trip to Strathcona for the purpose of selling defendant's merchandise there, he was engaged in the furtherance of defendant's business, though unsuccessful in selling any merchandise. It seems the purport of the requested instruction was so fully covered by the court that defendant cannot claim prejudice because of the omission to give it. There may be some doubt as to the test formulated by Mr. Justice Cardozo when chief justice of the court of appeals of New York, for two members of the court dissented.

The order is affirmed.

518

STONE, JUSTICE (dissenting).

The majority seem to have entirely overlooked what to me is a very important circumstance, conclusive against the exercise of ordinary care by Vogel. The tire marks on the highway showed that his brakes were actually applied at least 30 feet before his car collided with the Johnson car. This shows to a certainty that he saw the Johnson car at least 35 or 40 feet before his brakes were applied. It is a matter of common knowledge, and public tests by experts have demonstrated, that at 35 miles an hour the "thinking period" after observation of an obstruction and before brakes can be made to function carries a car a minimum of 35 or 40 feet. Courts can no longer ignore a fact so commonly known and so frequently demonstrated. It demonstrates to a certainty that Miss Anderson's opinion was at fault when she said that she and Vogel first discovered the Johnson car when it was within 30 feet. With statutory lights such as it may be presumed Vogel had (Miss Anderson says his lights were all right), the presence of the car must have been revealed at least 200 feet away. (The brush referred to by the majority did not obstruct the horizon where the road met it.) Vogel in the exercise of an ordinarily prudent lookout should have seen the Johnson car long before he did see it. His attention may have been elsewhere, but that he did see it at least 65 or 70 feet before he struck it is not to be gainsaid on this record. Otherwise he would not have started to put on his brakes. The traveled road was 32 feet wide, 20 to 25 feet of it wholly unobstructed, straight, smooth, offering the best of traction, and without a single element to distract his attention. Any driver of ordinary prudence with at least a quarter of a city block between him and the Johnson car could and would have missed it by many feet. It was the car and not Johnson that caused Vogel's death when the brakes were applied and Vogel was swinging his car hard to the left, trying at that late moment to avoid the Johnson car. He was not trying to avoid Johnson for he turned directly toward him and killed him instantly, throwing his body into the east ditch. From the marks on the highway, Vogel had a clear space of at least 20 and probably 25 feet into which to turn. These are established

facts. Assuming that he was driving with his hands on the steering wheel as prudence would dictate, no "thinking period" was required to get them there and very little to start the wheel turning. His opportunity to turn away from the Johnson car was abundant. His reaction to the situation should have been almost instinctive. Motorists are constantly required to act within fractions of a second and with no more opportunity to reflect than had Vogel here. If as Sherwin testified and the force of the impact indicated he was driving faster than 35 miles an hour, the "thinking period" must have covered a correspondingly longer distance and he must have actually seen the car when still farther from it. In either case it appears to me that reasonable minds must conclude that his conduct lacked the prudence that would be exercised by the ordinary driver.

There was nothing to divert his attention from the road. The Johnson car was a conspicuous object. To a driver with his mind on his job, there was abundant opportunity to avoid it after prudent observation would have revealed it. It seems to me that the Orrvar case, 189 Minn. 306, 249 N. W. 42, is controlling here.

Passing from the particular to the general, it is common knowledge that a relatively large number of verdicts for the plaintiff in these automobile cases is explainable only by the fact that the defendant is insured. More and more our records show cases of obvious coöperation, if not collusion, between plaintiff and defendant to make sure if possible that the latter's insurer will have to pay. Putting aside the invitation to perjury, the result is not justice, but, however judicially approved, an arbitrary and capricious attempt to redistribute supposed wealth. Some may even think that it is a process of "soaking the rich." But everybody knows (at least anybody who cares to think through the proposition must know), that, while property is redistributed, disproportionate wealth is not touched. That is simply because affected insurance companies, if they are able to remain in business (many have been compelled to quit) recoup the losses, both just and unjust, imposed upon them by juries by increasing premium or assessment rates. The burden is merely passed on to the motoring public. The process

520

goes far to explain why Minnesotans are paying excessive premiums for their automobile insurance. To the extent that judges sustain verdicts which lack support of adequate evidence they but add another increment to an already heavy burden. An even more serious result is that as cost of insurance goes up the number of car owners insured goes down. An increasing number of motorists go without insurance because they cannot pay for it. In proportion, the protection of the general public is decreased.

LORING, JUSTICE (dissenting).

I am in accord with the views expressed by Mr. Justice Stone.