NETTIE SZYPERSKI v. SWIFT & COMPANY AND OTHERS.[1]

October 16, 1936.

No. 31,050.

*Frederick J. Miller, Leonard L. Sumner,* and *M. E. Brooks,* for appellants.

*Robert J. McDonald* and *Dell & Rosengren,* for respondent.

[1]Reported in 269 N. W. 401.

JULIUS J. OLSON, JUSTICE.

This action arose out of a traffic accident occurring upon state highway No. 27 about two and one-half miles east of Little Falls on the evening of November 22, 1934. Plaintiff as administratrix of the estate of her husband, who died as the result of injuries received in the accident, brought this action to recover damages pursuant to authority granted by 2 Mason Minn. St. 1927, § 9657. She prevailed as to two defendants, appellants here. The third defendant, Theodore Gau, was exonerated by the jury's verdict. The appeal is from an order denying appellants' motion for judgment notwithstanding or new trial.

Plaintiff's intestate, Peter Szyperski, was alone in his car, and so also were the individual defendants, Skoglund and Gau, in their respective vehicles. Thus, at the outset, plaintiff's cause hinges very largely upon admissions made by them.

Skoglund was an employe of the corporate defendant Swift & Company; hence its liability is predicated upon the theory of *respondeat superior*. It is conceded that he was in the performance of his employer's business as such employe when the accident took place, and that the car driven by him belonged to his employer.

On the evening of the day mentioned, about 7:45 o'clock, Skoglund, while traveling in a westerly direction, had run his car into the ditch on the north side of the highway. He was unable to get out because, while the ditch was shallow, a recent rain had left the ground soft. Defendant Gau was driving his truck easterly, and when he came opposite Skoglund's car and saw his predicament stopped and inquired whether help was needed. Skoglund was glad to get help and requested that Gau render such aid as would bring his car back on the highway. The Skoglund car was not disabled. The whole difficulty was that the ground was soft so that it could not get out under its own power. He thought the car might be pushed out with the aid of Gau's truck, but this effort failed. A farmhouse was not far distant so Gau went there to borrow a rope or chain with which to bring about the desired result. He did so and soon came back with a chain approximately 15 feet in length. This was attached to the rear bumper of Skoglund's car and the

other end to the rear part of Gau's truck. Gau then proceeded upon the highway and in a southeasterly direction to pull Skoglund's car out of the ditch, Skoglund remaining in his car and handling the steering wheel. When the Skoglund car had been so far backed up on the road as to operate under its own power Gau unfastened the chain and went back to his truck. He straightened out the truck on the southerly part of the traveled portion of the road but very near the center line. In fact, the evidence strongly indicates that the rear end of his truck was over the line and partly upon the northerly lane of travel. Skoglund's car was at an angle across the northerly lane. It will thus be noted that the two vehicles in this position constituted a genuine traffic hazard. That the northerly lane was effectively obstructed is obvious. On the southerly half a few feet remained so that if one traveled very slowly he might possibly have found room to pass. Gau testified that "it would have been very hard for him to pass at any rate of speed. I would not say that he would have to be an acrobat to get by."

An automobile light was observed coming from the east. There is a general downgrade approximately half a mile in length easterly of the place where the two vehicles were thus parked. The night was dark and cloudy. The road was a tarviated one, and to the south there were trees. Gau's truck was well lighted with bright lights which were shining easterly and practically facing the approaching car from the east. The car thus approaching from the east was the one driven by plaintiff's intestate.

Gau, realizing the situation and the dangers incident thereto, asked the farmer from whom he had borrowed the chain to proceed easterly and to flag the oncoming car. This was done, the farmer carrying Gau's electric lantern, which he claims he swung to indicate danger ahead. There is some uncertainty respecting the distance he had proceeded before the approaching car reached the place opposite which he was standing. At any rate, the evidence would justify a finding that he had not proceeded more than 75 or 80 feet. Plaintiff's intestate either did not see or failed to understand the import of the light thus used. He proceeded on his way but upon his proper side of the highway. A moment later the im-

pact took place, the Szyperski car striking the truck a glancing blow immediately back of the left headlight, thus indicating that he probably swung somewhat to his left when his lights shown upon the Skoglund car, which was parked across the highway and some few feet to the west of the truck. The rear light of Skoglund's car was obscured by the truck.

The usual defenses were interposed by the respective defendants, i. e., denial of negligence on their part and averment of contributory negligence on the part of plaintiff's intestate.

The court submitted to the jury these issues, and, as already stated, the jury found for the plaintiff as against Skoglund and his employer but exonerated defendant Gau. There is no appeal involving Gau's liability.

Skoglund and his employer urge several errors as grounds for reversal. They claim (1) that there was no actionable negligence shown in the conduct of Skoglund; (2) that plaintiff's intestate drove at an unreasonable rate of speed and failed to heed the warnings given him by the farmer who had gone out to warn him; hence that there should be judgment notwithstanding. They also claim that Gau was in fact an independent contractor and that if there was any negligence shown it was his, not Skoglund's; that Gau, having been exonerated by the jury, no liability could be fastened upon them; that the verdict of the jury holding Skoglund and his employer to liability is perverse. To these contentions we direct our attention.

■ There can be no doubt that Skoglund's car while in the ditch left him in a precarious situation, but his car was out of harm's way to the traveling public. The manner in which the work of Gau and Skoglund was performed to bring the car out of the ditch and the way in which these vehicles were placed gave rise to imminent danger to any oncoming car from the east. Some brief excerpts from the record may be helpful. Skoglund testified:

"When my car got up on the road I don't know how far I backed up. When I swung up the hind wheels on the road I put the brake on. * * * I saw the lights of the Szyperski car coming down

the road at the time. I knew what side of the highway it would use if it was traveling in its proper place. The back end of my car would be right in the path of that car. I did not do anything after seeing that car come down the highway to get out of its way."

Gau testified:

"His car [Skoglund's] went under its own power and slackened up the cable; so I straightened my car some on the highway. For all practical purposes my lights were then shining substantially down the highway. On this side of the road. They were on and they were bright lights, the ordinary good bright lights. Then my car stood parked there on the highway. And the Swift Company car stood parked on the highway. * * * The left rear wheel of the Swift & Company car is over the center line or partially on it. That is right as far as I know. Practically all of my truck is over on its side of the road with the exception of the left rear wheel, which is right on the center line, or just a little to the north of it. Practically on the center line."

While the time within which the Skoglund car remained in this position is limited to "a fraction of a minute," the fact remains that if Skoglund had released his brakes his car would have slid back into the ditch, and out of harm's way, in time to have avoided the collision. At least the jury could so find. Also, not to be overlooked, is the testimony of Gau that Skoglund by cramping his front wheels could have swung clear of Gau's truck and gotten over on the south side of the road.

We think the question of negligence on the part of both individual defendants was for the jury.

■ A more difficult question is that of the alleged contributory negligence of plaintiff's intestate. For appellants it is urged that the physical facts demonstrate that Szyperski was driving at an unreasonably high rate of speed; that he did not maintain a proper lookout and failed to slow down when signaled; that as a result of the impact the truck was pushed a distance of nearly 32 feet from where it was parked, thus necessarily indicating, so it is said, that decedent's car was traveling at a very rapid rate.

For plaintiff it is claimed that the testimony respecting the rate of speed employed by decedent is not convincing. The farmer who was attempting to flag him did not even venture a guess. Gau thought the speed may have been between 40 and 50 miles per hour. That is the rate of speed he reported to his insurer shortly after the accident. He testified: "I don't know how fast the car was coming. He may have been going faster than 45 miles an hour. I don't know if he was going 40 to 45 miles an hour; I have no way of estimating it."

All of the parties directly involved were well acquainted with this road and knew that it was traveled extensively. Decedent was a rural mail carrier, and this road was used by him in his daily work. He was an experienced driver. As such he had the right to expect that his lane of traffic was clear, absent statutory or other adequate warning. The truck with its bright lights shining along and upon the southerly half of the highway did not indicate that there was anything dangerous in decedent's lane of traffic. Skoglund's car was upon that portion of the highway not visible to a driver coming from the east. The slope or grade of the road was from the east to the west. The road was tarviated and the night dark. There were trees to the south, and some distance to the west there was a rather deep cut through higher ground, thus tending to make the background invisible. Skoglund's car was located a few feet to the west of the rear of the truck and was within that space where the pupil of the eye of an oncoming driver could not discern its location. There is always a space between approaching headlights and what is immediately behind them that virtually leaves a space in complete darkness. These men as experienced automobile drivers and well acquainted with the surroundings undoubtedly knew these facts, yet made very ineffective efforts to guard against the accident that took place. The situation was admittedly fraught with danger, in fact a deathtrap.

With regard to the swinging lantern, it may be noted that it was a rather inefficient thing. The farmer carried it in the palm of his hand. He was traveling upon the southerly lane of traffic and as such may have been within the strong rays of light emanating from

Gau's headlights. As such the rays from this little lamp may well have been so diffused with the stronger rays from the headlights on the truck as to make the signaling ineffective. There is the possibility also that even if Szyperski saw the light he may have thought that the one using it did so for his own safety only. It is not an uncommon occurrence for pedestrians while using a highway at night to carry flashlights for their own use and protection.

The rule guiding us and frequently reiterated by this court may well be summarized in the language of the late Chief Justice Start in Gilbert v. City of Tracy, 115 Minn. 443, 444, 132 N. W. 752:

"Where a person is killed by the negligence of another, a very strong presumption arises that the deceased exercised due care to save himself from personal injury or death. The presumption is based upon a law of nature, the universal and insistent instinct of self-preservation. The presumption, however, must yield to clear proof of his contributory negligence; but the question is always one of fact for the jury, unless the undisputed evidence so conclusively and unmistakenly rebuts the presumption that honest and fair-minded men could not reasonably draw different conclusions therefrom."

See also Fairchild v. Kilbourne, 152 Minn. 457, 189 N. W. 126; Jacobs v. Belland, 171 Minn. 338, 214 N. W. 55; Forster v. Consumers Wholesale Supply Co. 174 Minn. 105, 218 N. W. 249; Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630; Olson v. Purity Baking Co. 185 Minn. 571, 242 N. W. 283; Brown v. Raymond Bros. Motor Transportation, Inc. 186 Minn. 321, 243 N. W. 112; Martin v. Tracy, 187 Minn. 529, 246 N. W. 6; Tully v. Flour City C. & O. Co. 191 Minn. 84, 253 N. W. 22. One of our latest cases bearing upon a similar situation is that of Vogel v. Nash-Finch Co. 196 Minn. 509, 265 N. W. 350.

The present case is on the border line. We cannot say that contributory negligence appears as a matter of law. We think the case is one where honest and capable minds sitting in judgment might come to different conclusions. That is enough to sustain the verdict on this issue.

■ Nor are we impressed with appellants' claim that Gau was an independent contractor or that the evidence was such as to require the trial court to submit that issue to the jury. The cases by them relied upon are clearly distinguishable. Gau was a farmer who also did some trucking as a side issue. He was not engaged to take in hand this job as a garageman or other expert in that line of endeavor. He rendered the assistance in no other fashion and for no other purpose than such aid is generally extended by one automobilist to another who is in trouble. The efforts of Skoglund and Gau were more in the nature of a joint effort to accomplish the purpose sought, namely, to get the Skoglund car out of the ditch and upon the highway so that it could proceed.

The court instructed the jury:

"In the event that you find from a careful consideration of all of the evidence that the defendant Gau was negligent and that Skoglund was also negligent and that the negligence of both concurred in causing this accident and the injuries to the plaintiff, then all of the defendants would be liable. All would have to respond for the damages in the event that the plaintiff has proved such negligence and that such negligence would be the proximate cause of the accident." And further, in the event the jury should find that at the time of the accident Gau's employment had ended, "and then after that he was negligent and that his negligence was the sole and only cause of the accident, then his negligence would be the proximate cause of the accident and he alone would be responsible. I will also say to you that in the event that you find that the defendant Theodore Gau was not negligent but that the defendant E. R. Skoglund was negligent and that his negligence was the sole cause of the accident, then and in that case the defendant E. R. Skoglund and the defendant Swift & Company would be liable and not the defendant Theodore Gau."

Our decisions justify the instructions quoted. Thus in Geiss v. Twin City Taxicab Co. 120 Minn. 368, 138 N. W. 611, 45 L.R.A. (N.S.) 382, the first syllabus paragraph reads:

"Where a servant, without authority from the master, permits a stranger to assist him in his work for the master, and such stranger, in the presence of the servant and with his consent, negligently does such work, the master is liable for such negligence."

The decision upholds the quoted paragraph. And in State ex rel. Nienaber v. District Court, 138 Minn. 416, 165 N. W. 268, L. R. A. 1918F, 200, the facts are very similar to those related in the instant case. To the same effect is Brown v. Murphy T. & S. Co. 190 Minn. 81, 251 N. W. 5.

While the jury could well have found Gau equally responsible with Skoglund, we cannot say as a matter of law that the jury was wrong in exonerating Gau. There was a brief interval of time elapsing after the chain had been unhooked and after Gau had "straightened out" his truck upon the road when Skoglund was absolutely free to act independently of Gau. This being so and if the jury was justified in finding, as we think they were, that Skoglund's negligence in permitting his car to remain in this admittedly dangerous position is what brought about the accident, then clearly liability as to him and his employer followed. This does away with further consideration of appellants' claim that the verdict is perverse.

Other assignments of error have been examined and found not to require reversal.

Order affirmed.

STONE, JUSTICE (dissenting).

It seems to me that there was contributory negligence as matter of law. Also, that the transfer of the Skoglund car from the ditch to the road was a unit, so indivisible that no line can be drawn, save in pure fancy, between the actions of Gau and Skoglund as agencies of causation.