MICHAEL R. HATHAWAY AND ANOTHER, MINORS, BY THEIR MOTHER AND NATURAL GUARDIAN, LUCILLE M. HATHAWAY, AND OTHERS v. DALE MOVERS, INC., AND ANOTHER.
KENNETH HATHAWAY, THIRD-PARTY DEFENDANT.

167 N. W. (2d) 32.

April 3, 1969—No. 41343.

*Schermer & Gensler* and *Irvin E. Schermer,* for appellants.

*King, MacGregor & Lommen* and *Norman W. Larsen,* for respondent third-party defendant.

*Dorfman, Rudquist & Karalis* and *John P. Karalis,* for respondents Hathaway.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

MURPHY, JUSTICE.

This is an appeal from an order denying defendants' motion for a new trial or for judgment notwithstanding the verdict. The case involves damages growing out of a rear-end collision between a passenger car driven by plaintiff Kenneth Hathaway and a large motorized piece of excavation equipment, described as a "Michigan Loader," owned by defendant Dale Movers, Inc., and driven by defendant Dale Ellsworth Peterson. Defendants do not deny fault but allege that plaintiffs were contributorily negligent as a matter of law.

The accident occurred on Highway No. 10, which is a divided highway with two traffic lanes on each side of a center divider. Plaintiff driver was proceeding west and was accompanied by his two younger brothers, plaintiffs Michael and William Hathaway. Defendant Peterson was driving the Michigan Loader ahead and was accompanied by his brother, plaintiff Gary Arlo Peterson. One Reuben Jensen, who had been following the Hathaway car, witnessed the accident. The accident occurred about 1:30 a. m. Visibility was poor since it was a dark, rainy, and misty night. Kenneth Hathaway testified that his headlights were

in good condition and illuminated the road as well as could be expected, but he was unable to state how far the beam reached. The Michigan Loader, which was a large piece of heavy construction equipment having 4 tires 6 feet in height and a large, dirt-covered steel scoop attached to the rear, was proceeding west about 25 to 29 m. p. h. This vehicle had no rear taillights or reflectors but did have one white light which beamed to its rear above the loader. One-third of the loader was on the paved portion of the highway, and two-thirds of it was on the shoulder. The white light which shone above the loader was affixed to the cab at a point about 8 or 10 feet above the surface of the road. Its position was directly above the edge of the paved portion of the highway. Hathaway was following the loader at a speed of about 35 to 40 m. p. h., with windshield wipers and defroster operating and headlights set on low beam. Hathaway testified that he saw the white light but attached no particular significance to it, assuming that it was a light warning of construction work in the area. Within a few seconds after Hathaway observed the light, he saw an object loom up out of the mist and, realizing his danger, attempted to brake and spin his wheels, but he was unable to avoid colliding with the steel scoop or shovel affixed to the loader.

Kenneth and Michael Hathaway testified that they did not see the loader until the point of impact. Jensen, who had been behind the Hathaway vehicle and was also proceeding west on Highway No. 10, saw the white light when he was approximately one-eighth of a mile from it. He reduced his speed of 50 m. p. h. at about the same time as the collision occurred. He assumed that the light was on a bridge which was under construction, but did not associate it with a moving vehicle.

Defendants contend that Kenneth Hathaway's conduct in disregarding the warning implicit in the white light was inexcusable and necessarily establishes contributory negligence as a matter of law. Hathaway, on the other hand, contends that his rate of speed as he approached the light was reasonable under the circumstances; that the height and position of the white light, unaccompanied by any warning indicia required of a moving vehicle in the nighttime, was misleading and confusing; and that it could well have indicated a yard light on a distant farm or the headlights of an approaching car as it rounded a corner. Nothing about it

suggested the presence of a large piece of construction equipment, partly on and partly off the traveled portion of the highway.

■ Defendants' claim of plaintiff driver's contributory negligence must be considered in context of the circumstances which gave rise to the accident. The record would indicate that a variety of factors contributed to the occurrence, including the condition of the pavement; the dark and rainy weather; the absence of the usual and required warning signals on the vehicle ahead; the unusual position of the white light; and the coloration of defendants' dirt-covered vehicle, which blended with the darkness. All of these circumstances presented a question of fact as to whether plaintiff driver was contributorily negligent.

The usual rule as to care required of a motorist whose vision is impaired by a combination of circumstances, such as we have here, is the care which persons of ordinary prudence exercise under the same or similar circumstances. In affirming a verdict in a somewhat similar situation in Knutson v. Nielsen, 256 Minn. 506, 511, 99 N. W. (2d) 215, 219, we said:

"* * * It is clear therefore that in this case we have the element of darkness coupled with the element of a blinding effect and probable confusion caused by the fact that there was no red light projecting from the rear of the tractor and that there was in fact the unlawful projection of a white light, knowingly placed on the rear of the tractor, of the same size and dimensions as the white lights on the front."

Also holding that the question of contributory negligence is for the jury where the plaintiff has rear-ended the defendant are Vogel v. Nash-Finch Co. 196 Minn. 509, 265 N. W. 350; Brown v. Raymond Bros. Motor Transp. Inc. 186 Minn. 321, 243 N. W. 112; Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605; and Lee v. Smith, 253 Minn. 401, 92 N. W. (2d) 117.

If we view the evidence in the light most favorable to plaintiffs, as we are required to do, we cannot say that all reasonable men would conclude that plaintiff driver did not exercise that degree of care under the circumstances which a reasonable person would exercise for his own safety. 13B Dunnell, Dig. (3 ed.) § 7012; Annotation, 22 A. L. R.

(2d) 292, 329; 8 Am. Jur. (2d) Automobiles and Highway Traffic, §§.726, 727.

■ Defendants next contend that the court erred in refusing to instruct as to the headlight requirements of Minn. St. 169.60.[1] While the court may well have instructed the jury with reference to this provision, we cannot say it was error for him not to do so. As in Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814, there was no evidentiary issue as to defective lights on Kenneth Hathaway's car, nor was there any evidence which would justify a jury in finding contributory negligence on his part by reason of any violation of the statute governing proper lights. In the instant case there was ample testimony as to poor visibility because of weather conditions. The scoop on the loader was dirty and rusty, and there was a glare emanating from the unlawful white floodlight. These circumstances persuasively explain Hathaway's failure to detect the presence of the loader sooner than he did. Nor was there evidence which would show that his headlights were malfunctioning. We cannot agree that the trial court erred in denying the requested instruction. Lee v. Lee, 248 Minn. 496, 80 N. W. (2d) 529, 67 A. L. R. (2d) 176; Lundin v. Stratmoen, 250 Minn. 555, 85 N. W. (2d) 828; Schlukebier v. LaClair, 268 Minn. 64, 127 N. W. (2d) 693.

The views expressed herein as to plaintiff Kenneth Hathaway apply as well to the issues in which the other plaintiff respondents are interested.

Affirmed.

---

[1] Minn. St. 169.60, so far as applicable here, provides: "(1) There shall be an uppermost distribution of light, or composite beam, so aimed and of such intensity as to reveal persons and vehicles at a distance of at least 350 feet ahead for all conditions of loading;

"(2) There shall be a lowermost distribution of light, or composite beam, so aimed and of sufficient intensity to reveal persons and vehicles at a distance of at least 100 feet ahead; and on a straight level road under any condition of loading none of the high intensity portion of the beam shall be directed to strike the eyes of an approaching driver."