DOUGLAS L. JOHNSON v. SUNSHINE CREAMERY COMPANY AND OTHERS.[1]

July 2, 1937.

No. 31,343.

[1] Reported in 274 N. W. 404.

*Robert B. Gillespie* and *Guesmer, Carson & MacGregor,* for appellant.

*William H. Freeman,* for respondents.

HOLT, JUSTICE.

Plaintiff appeals from the order denying a new trial after a directed verdict in favor of the defendant Sunshine Creamery Company and its employe, Joseph Salmen.

At about 5:30 p. m., November 27, 1935, a mile south of Johnsville, on trunk highway No. 65, a delivery truck of the Sunshine Creamery Company, driven south by Salmen, collided head on with a cattle truck driven north by defendant Mike Sweet. The evening was dark and blustery. Sleet mixed with some snow made visibility poor and the roadway slippery. The trucks became fastened together and blocked travel on the pavement. There is testimony that all lights on both trucks were out. However, one or two testified that the rear light on the Sunshine Creamery Company's truck,

hereinafter referred to as the Sunshine truck, was burning. The second car, a truck, that came up after the collision, had three K.. K. flares, and these the driver, Edmonson, lit and placed one on the west shoulder of the highway some 75 feet to the north of the Sunshine truck and one on the east shoulder about the same distance south of the Sweet truck, and one near the end of the latter, since it had some boards that stuck out to the rear. A fireman from Minneapolis, Maybee, was about the third driver who came up from the south. Maybee noticed the flare and slowed down, but did not discover the Sweet truck in time to avoid having his windshield pierced by its projecting boards. He backed out and parked his car on the east shoulder. One man was then set to swing down traffic coming from the south with the south flare, and Maybee, seeing a car approaching from the north, ran to get the north flare for the purpose of swinging down traffic from the north. He could not reach the flare before this car passed and ran into the Sunshine truck. In this car, a closed Ford truck, driven by defendant Bunker, plaintiff, a doctor, was riding, attending one Oftel, who had been severely injured in an accident shortly before and was being conveyed to a hospital in Minneapolis. Oftel was on a stretcher, and plaintiff was seated on a folding chair alongside. This car will be referred to as the ambulance. Bunker estimated his speed to have been 40 to 45 miles per hour. Others place it higher. He, like Maybee, took the flare to mean a hole in the shoulder. As he came close to the obstruction he realized that the string of cars whose headlights he noticed were not moving, but were parked on the east shoulder. He testified that there was no light on the rear of the Sunshine truck, and he discovered the truck's presence too late to avoid the collision. Plaintiff was severely injured and sues to recover damages.

Those who first arrived after the collision of the Sunshine and Sweet trucks quickly realized the dangers to which travelers were exposed by the position of the trucks. They did what they could to warn oncoming drivers of cars. The flares as placed proved inadequate under the weather conditions then existing. An attempt was made to increase the effectiveness of the flares by swinging

them, but unfortunately the attempt was made too late in respect to the north flare. It is not necessary at present to go into the evidence more in detail in order to understand the legal proposi-. tions presented for review. The complaint charged that both Salmen and Sweet negligently and carelessly drove their trucks at excessive speeds and failed to keep them upon the proper side of the highway, thus causing their collision and an obstruction thereon, and that, after the collision created the obstruction, said drivers of the trucks and the Sunshine Creamery Company failed to use due care and were negligent in not placing red lighted fuses similar to those used by railroad companies at the proper distance from the end of each truck.

There are many assignments of error, but it will not be necessary to consider all, for there should be a new trial on the ground of two rulings on the admission of evidence and also on the ground that there was evidence to go to the jury upon the issue of respondents' negligence as the proximate cause of plaintiff's injuries.

Plaintiff called Sweet as a witness and proved by him that Salmen drove the Sunshine truck over onto the northbound lane of travel right head on into Sweet's truck. On motion of respondents, this testimony was stricken on the ground that the collision between these two trucks had no causal connection with the plaintiff's injury. To this ruling plaintiff excepted. We think the court erred. Had the ambulance, in which plaintiff was riding, followed the Sunshine truck at such a distance that its driver, Bunker, could not have seen Sweet's truck approaching or its collision with the Sunshine truck, and then collided with the obstruction caused by the sole negligence of Salmen, there could be little doubt of the causal connection of such negligence and plaintiff's injury. The fact that the ambulance did not reach the obstruction until about an hour after its creation would not seem to break the chain of causation as a matter of law. Or, suppose Salmen's negligence had been the sole cause of the collision with Sweet and both drivers had been so injured as to be incapable of doing anything in the way of warning others of the condition created, and then the ambulance had run into the obstruction, we apprehend a causal con-

nection between Salmen's negligence and plaintiff's injury could be found even though the first collision occurred more than an hour before the second. If Sweet's testimony was true, the sole negligence of Salmen created the obstruction in the highway which caused plaintiff's injuries, unless Bunker's negligence could be said to be an intervening independent cause. It occurs to us that this would be a jury question and that a jury might find that the negligence of those concerned in the first collision contributed to cause the second. The following cases appear to lead to this conclusion: Holmberg v. Villaume, 158 Minn. 442, 197 N. W. 849; Brown v. Murphy Transfer & Storage Co. 190 Minn. 81, 251 N. W. 5; Wedel v. Johnson, 196 Minn. 170, 264 N. W. 689.

Respondents called one Corcoran, a worker in the highway patrol department, who, over plaintiff's objection, was allowed to testify that the highway department had approved the K. K. type of flares, the kind here placed on the shoulders by Edmonson. He was also permitted to testify, over plaintiff's objection, that the flares prescribed by L. 1933, c. 252, 3 Mason Minn. St. 1936 Supp. § 2720-54½, are impractical as safety signals. The here pertinent part of that law provides that when for any reason a motor truck is left standing on a trunk highway in the nighttime the operator thereof shall "cause to be placed at least 50 feet from each end thereof a lighted red fuse similar to fuses used by railroad companies, * * * and each motor truck or motor bus shall carry with it as a part of its equipment the facilities for carrying out the provisions of this section." By Salmen plaintiff proved that the Sunshine truck carried no fuses such as called for by the quoted statute, nor any other means for signal by light of the presence of the truck if stopped after dark on the highway. In the first place, there was no foundation laid for this witness testifying to any action of the highway department; and, in the next place, no law, to which our attention has been called, granted authority, at the time of the collision, to that department to override or modify the mandate of the statute in respect to fuses or flares. By Ex. Sess. L. 1935-1936, c. 71, 3 Mason Minn. St. 1936 Supp. § 2720-54½, which took effect January 24, 1936, the commissioner of highways is authorized to

approve flares or warning signals called for by L. 1933, c. 252. The witness said the flares prescribed were impractical because they last for only 15 minutes. The law does not limit the number to be carried. The testimony of the witness Corcoran should have been excluded.

We also think the court erred in directing a verdict in respondents' favor. It is true that in the collision between the Sunshine truck and the Sweet truck both drivers were somewhat injured. But not so that it can be said as a matter of law that they were relieved from taking some step to protect travelers on the highway against the hazard their trucks in the middle of the pavement presented. There was testimony that Salmen went around and took down the names and addresses of persons present. It was the duty of these drivers speedily to remove the property in their charge from the highway and, in the meantime, to use due care to warn travelers of its presence. Whatever bystanders did in that direction the respondent Sunshine Creamery Company may be credited with, but the company and its driver must be charged with what was done amiss or omitted. Traffic was heavy this night before Thanksgiving Day. It was sleeting or snowing. The pavement was slippery. The visibility was poor. It was for the jury to say whether the one in charge of the Sunshine truck used due care to warn the ambulance of its presence on the pavement. It was also for the jury to say whether the failure of the Sunshine Creamery Company to carry the flares or fuses required by L. 1933, c. 252, was a proximate cause of plaintiff's injury. It cannot be said as a matter of law that Bunker, the driver of the ambulance, was negligent or that his negligence was the sole proximate cause of plaintiff's injuries. Of course no negligence of Bunker can be imputed to plaintiff, so contributory negligence cannot be urged as a bar to recovery. Had Sweet's testimony remained in the case the jury could have found that through the sole negligence of Salmen the Sunshine truck unlawfully obstructed the highway when the ambulance collided therewith. No intervening act of a third person had changed its position to make it more of a menace to travel. There would seem to be no difficulty in finding that if the collision

between the Sunshine truck and the Sweet truck was due to Salmen's negligence the natural result or sequence of such negligence was the obstruction the ambulance struck causing plaintiff's injury. The situation here is not like that in Childs v. Standard Oil Co. 149 Minn. 166, 182 N. W. 1000, cited by respondents. There the oil negligently spilled by the defendant's servant was discovered by a third party and sawdust spread over it and the mass swept up and left near the furnace. Another person knowing the condition, in an attempt to feed the furnace, took a shovel, probably used on the oily sawdust, to remove a stick of wood that stuck in the furnace door, a burst of flame set the oily stuff on fire, and the entire building was consumed. There was in that case an independent responsible agent with knowledge of the situation who changed conditions, and then a negligent act by another which caused the fire to contact the inflammatory substance. Here Bunker, without knowledge of the obstruction the negligence of Salmen had created, ran the ambulance into it. It cannot be said, as a matter of law, that the collision of the ambulance with the Sunshine truck and the resulting injuries to plaintiff were proximately caused by the sole negligence of Bunker. It is to be kept in mind that he was hurrying a dying man to a hospital and must speed to the limit.

Since for the errors pointed out a new trial must be had, it is not necessary to consider other errors assigned, for in such trial there may be no occasion for like rulings.

The order is reversed.

LORING, JUSTICE (concurring specially).

I concur in the result, but I do not agree that it was error to strike out the evidence relating to the cause of the collision between the Sunshine truck and that driven by Sweet. In my opinion, such collision was the remote as distinguished from the proximate cause of the later collision. It did not follow in unbroken sequence without an intervening efficient cause from the original collision. Doubtless, had the second collision occurred so soon after the first that there was no opportunity to comply with the statute or with the dictates of ordinary care as to warning, the sequence would have

been unbroken and the negligence of the truck driver would have been proximate; but in the case at bar neither truck driver was disabled, and had they put out the statutory flares and had they done all else that ordinary prudence required, the original negligence would have been insulated by their subsequent precautions, which in the absence of negligence on the part of Bunker should have prevented the second collision. In that situation there would be no reasonable ground to anticipate injury to anyone. Therefore it was the failure to put out the proper flares that was the efficient cause which concurred with Bunker's negligence, if any, and which efficiently intervened to break the sequence between the first and second collisions. Goar v. Village of Stephen, 157 Minn. 228, 237, 196 N. W. 171; Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640; Hamilton v. Vare, 184 Minn. 580, 583, 239 N. W. 659; La Londe v. Peake, 82 Minn. 124, 84 N. W. 726.

STONE, JUSTICE (concurring).

I agree in the result and with what is said by Mr. Justice Loring, with this addition. Of course, the law is the law, and the highway department has no authority "to override or modify the mandate of the statute in respect to fuses or flares." Without considering the foundation or lack of it for the testimony in question, I submit that if the fuses indicated by L. 1933, c. 252, proved impractical and that something better developed, evidence to that effect was material— especially so for the litigant who was using a more efficient device than that called for by the statute. The purpose of such evidence would be not to override any law, but simply to show that, the law notwithstanding, the proponent of the evidence is free from negligence. And I do not know of any source which should be able to furnish evidence better founded in experience than the highway department.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.