SEVER A. KNUTSON v. HANS NIELSEN AND ANOTHER, INDIVIDUALLY AND d.b.a. NIELSEN BROTHERS, AND ANOTHER.

99 N. W. (2d) 215.

November 6, 1959—No. 37,723.

*Leonard L. Sumner,* for appellants.
*Seifert, Johnson & Hand,* for respondent.

NELSON, JUSTICE.

This action was commenced by Sever A. Knutson, the father of Marlene Knutson, age 16, to recover for property damage to his 1957 Nash automobile due to an accident which occurred while the automobile was being driven by his daughter. The plaintiff was awarded a

jury verdict of $2,575. The amount of damages is not in dispute. The defendants moved the court for judgment notwithstanding the verdict or for a new trial, which motion was denied, and defendants appeal.

The plaintiff herein has the benefit of the rule that the reviewing court will view the evidence in the aspect most favorable to the verdict. The testimony which appears to have a direct bearing on the outcome is as follows: The accident occurred approximately 5 minutes before 6 p. m. on the evening of November 12, 1957. Earlier in the evening Marlene requested permission from her mother to use the family car for the purpose of going about the farm neighborhood to solicit magazine susbcriptions as her part in a contest in which the band members at the Jackson High School were engaged. The subscription contest was conducted for the benefit of the high school band fund and proceeds were to be used for uniforms, music, some of the larger band instruments, and band equipment. She was a senior at the high school at the time and played solo clarinet in the band. The record indicates that she was not obliged to participate in the subscription solicitation and that regardless of whether she did or not she could play in the band and have the uniform and equipment that the school required. The membership in the band was not required and no credit towards high school graduation was given for such participation.

Marlene's mother gave her permission to use the family car but did not direct her to go on any particular route or to be home at any particular time. The plaintiff, her father and owner of the car, was out in the field at the time and did not know that Marlene had been given permission to take the car and had therefore given her no instructions as to what she should do. While she sold a total of $43 in subscriptions, plaintiff never received any part of the monies collected nor was she selling subscriptions on his behalf. Marlene left home about 5 p. m. and had sold $18 worth of subscriptions, after stopping at about 10 farm homes, before the accident occurred. Her actions in these respects were voluntary and no one appeared to control whom she should contact.

The defendants Hans and Lester Nielsen are brothers and conduct a farm as partners, living on Highway No. 16 about 4 miles from Jackson and 10 miles from where the accident occurred. The defendant

Richard Fitzlaff was employed by the Nielsens as a farmhand and operated their tractor in the course of his employment. On the day of the accident defendants had been working on a farm a few miles to the south. When they decided to start for home, the red taillight failed to work on the tractor. When Fitzlaff was about to leave the field with the tractor, that matter was discussed and Lester Nielsen told him to put a white light on as a substitute. The white light was about 4 inches in diameter and the same size as the white lights on the front of the tractor. It is described in the record as "sort of a spotlight."

The accident occurred on a gravel county road about 1½ miles south of Alpha, Minnesota. It was dusk at the time and lights were necessary. The road over which both parties travelled is straight and level at the scene of the accident for at least a mile. The tractor was being driven by Fitzlaff in a northerly direction on the right-hand edge of the road, and as Marlene drove behind it in the same direction, she saw one white light which she testified appeared to be coming down the road towards her and looked to her like a motor scooter. While at first she was traveling at 45 to 50 miles per hour, she slowed down and crept closer to the right thinking it would go back into its own lane. When she got close to the tractor, the white light blinded and confused her. She states that the last she remembered was the left wheel of the tractor in her lane and she pictured it as a man standing behind a tractor or some such object and that then she stepped up the pressure on the brakes. She finally put the brakes on hard and turned to the right going into the ditch, missing the right rear wheel of the tractor. Her testimony is that it appeared to her to be a car coming toward her so she could not go back to the other side of the road; that upon first realizing that it was not a car coming toward her she faced blinding lights and became totally confused.

The record indicates that after the accident one of the defendants, Hans Nielsen, called at plaintiff's home and told Marlene's mother: "I am sure sorry it happened, and I am sure glad the girl wasn't hurt, and I feel like it is our fault for having that bright light on the back of the tractor."

Marlene had been issued an instruction permit under M. S. A. 171.05, which reads:

"Any person who, except for his lack of instruction in operating a motor vehicle, would otherwise be qualified to obtain a driver's license under this chapter, may apply for an instruction permit and the department shall issue such permit entitling the applicant, while having such permit in his immediate possession, to drive a motor vehicle upon the highways for a period of four months, but such person must be accompanied by a licensed driver or chauffeur who is actually occupying a seat beside the driver."

The record is clear that Marlene was not accompanied by a licensed driver or chauffeur occupying a seat beside her on the evening in question. There is testimony to the effect that on all previous occasions when Marlene went to sell subscriptions her mother or her sister would drive the car for her. Her mother said frankly she did not take her out on the occasion of the accident because she did not have time and did not feel good. There was evidence in this connection that Marlene had driven a farm tractor on the farm since she was 8 years old and had driven a jeep around the farm since she was 9 years old; that she had seen tractors on the road at night with red lights on them; and that she had not seen one with a white light in the rear nor had she seen a tractor on the road at night without lights. There is no evidence rebutting that testimony.

Section 169.55, a part of the Highway Traffic Regulation Act, provides:[1]

"At the times when lighted lamps on vehicles are required, each vehicle including an animal-drawn vehicle and any vehicle specifically excepted in sections 169.47 to 169.79, with respect to equipment and not hereinbefore specifically required to be equipped with lamps, shall be equipped with one or more lighted lamps or lanterns projecting a white light visible from a distance of 500 feet to the front of the vehicle and with a lamp or lantern exhibiting a red light visible from a distance of 500 feet to the rear, except that reflectors meeting the maximum requirements of this chapter may be used in lieu of the lights required in this section. *It shall be unlawful to project a white light to*

---

[1]The licensing act is not a part of the Highway Traffic Regulation Act.

*the rear of any such vehicle while traveling on any street or highway."* (Italics supplied.)

■ We will first consider defendants' contention that the conduct of plaintiff's driver constituted an efficient intervening cause which superseded any negligence of the defendants. Defendants say that research has failed to reveal any cases involving any fact situation similar to the instant case and that they are therefore forced to rely on the application of general principles of law to the facts herein. They therefore cite Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788; Sims v. Hallett Const. Co. 247 Minn. 339, 77 N. W. (2d) 54; and Kapla v. Lehti, 225 Minn. 325, 30 N. W. (2d) 685, as cases supporting their contentions.

Marlene testified as follows regarding the situation with which she was confronted:

"Q. Can you tell us whether or not this confused you in any way?

"A. Well, yes, I mean it appeared to be a car coming toward me, so naturally I wouldn't go back to the other side of the road.

"Q. When you first realized that it was not a car coming toward you what did you do?

"A. Well, I was totally confused, I slowed down and put on the brakes and turned to the right."

It is clear therefore that in this case we have the element of darkness coupled with the element of a blinding effect and probable confusion caused by the fact that there was no red light projecting from the rear of the tractor and that there was in fact the unlawful projection of a white light, knowingly placed on the rear of the tractor, of the same size and dimensions as the white lights on the front. A reading of the Medved case indicates that this court therein distinguished the facts in that case from other Minnesota cases in which accidents occurred at night and under facts causing probable as well as reasonably anticipated confusion.

Duff v. Bemidji Motor Service Co. 210 Minn. 456, 299 N. W. 196, cited by plaintiff, involved a fact situation where darkness had set in and confusion was probably caused by headlights. This court said there that a jury could reasonably infer a lack of negligence on the driver's

part, blinded as he probably was by the headlights of defendant's truck. In that case there was a failure on the part of the defendant to comply with the statutory requirement of putting out flares. It was claimed that the negligence of the driver (Wild) in not avoiding the collision was an intervening and a sole cause of injury to plaintiff. Nevertheless, this court said (210 Minn. 458, 299 N. W. 197):

"* * * Assuming negligence on the part of Wild, it was at least a question of fact whether it was concurrent with that of defendant rather than so independent of it as to be an intervening cause. Clearly, on the evidence, the question was for the jury. Johnson v. Sunshine Creamery Co. 200 Minn. 428, 274 N. W. 404."

In Bartley v. Fritz, 205 Minn. 192, 285 N. W. 484 (referred to in the Medved case), plaintiff was a passenger in an automobile owned and driven by one Schulte. The truck of the defendant was parked on the right side of the highway with the lights on and the motor running in violation of the statute. Sometime after 11 p. m. the car in which plaintiff was riding approached from the rear and ran into the truck. The motion of defendant for a directed verdict was granted in the court below, but on appeal a new trial was granted by this court on the ground that the question as to what constituted the proximate cause of the collision should have been submitted to the jury. The driver of the car in which the plaintiff was riding attributed his failure to see the truck to the glare from the lights of approaching vehicles.[2]

In Johnson v. Sunshine Creamery Co. 200 Minn. 428, 274 N. W. 404, the defendant company's truck had collided with a cattle truck so that the trucks became fastened together, blocking travel on the pavement. Three flares were put out, one to the north of the Sunshine truck.

---

[2]As to related fact situations that may be considered in the instant case, see Shastid v. Shue, 247 Minn. 314, 77 N. W. (2d) 273; Johnson v. Kutches, 205 Minn. 383, 285 N. W. 881; Brown v. Raymond Bros. Motor Transp. Inc. 186 Minn. 321, 243 N. W. 112; Vogel v. Nash-Finch Co. 196 Minn. 509, 265 N. W. 350; Jurgensen v. Schirmer Transp. Co. 242 Minn. 157, 162, 64 N. W. (2d) 530, 534; Schubitzke v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 156, 69 N. W. (2d) 104; Anderson v. Johnson, 208 Minn. 373, 294 N. W. 224.

As one Bunker, driving an ambulance in which plaintiff was riding, came from the north at a speed of 40 to 45 miles per hour, there were cars in the vicinity with headlights shining. While he saw the flare, he took it to mean a signal for a hole in the shoulder. When he came close to the obstruction, he realized that the string of cars, the headlights of which he had noticed, were not moving but were in fact parked on the east shoulder. There was no light on the rear of the defendant company's truck and he testified that under the circumstances he discovered the presence of the truck too late to avoid the collision. In that case it was claimed that Bunker's negligence was an intervening independent cause. This court said (200 Minn. 433, 274 N. W. 407):

"* * * It was for the jury to say whether the one in charge of the Sunshine truck used due care to warn the ambulance of its presence on the pavement. It was also for the jury to say whether the failure of the Sunshine Creamery Company to carry the flares or fuses required by L. 1933, c. 252, was a proximate cause of plaintiff's injury. It cannot be said as a matter of law that Bunker, the driver of the ambulance, was negligent or that his negligence was the sole proximate cause of plaintiff's injuries."

In Johnson v. Larson, 234 Minn. 505, 49 N. W. (2d) 8, this court held that the negligence of Larson in not putting out flares continued until the cars collided. The aforesaid Medved case and the other companion cases cited by defendants are entirely distinguishable upon the facts and are not controlling here. Our court has expressly rejected the policy of applying arbitrary standards of behavior amounting in effect to rules of law to all cases without regard to surrounding circumstances. Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327. If this court found it necessary to apply that rule in the Johnson case, how can we now say that the negligence of defendants in the instant case did not continue until the accident in fact occurred?

The court considered the Minnesota law on intervening cause in Northern Liquid Gas Co. v. Hildreth (8 Cir.) 180 F. (2d) 330, 334;

"* * * But the question whether the driver was negligent is a question of fact for the jury if, even though the evidence is undisputed, fairminded men will honestly draw different conclusions from it, and a

trial court may not direct a verdict unless '* * * the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is * * *.' Gunning v. Cooley, 281 U. S. 90, 94, 50 S. Ct. 231, 233, 74 L. Ed. 720."

We are justified in taking the view that our legislature in enacting § 169.55, requiring white lights projecting a distance of 500 feet to the front and red lights projecting 500 feet to the rear, had in mind the protection of travelers approaching a vehicle upon the highway from the rear as well as in the opposite direction. It would seem reasonably foreseeable to a violator of § 169.55 that a driver approaching from his rear would be confused and face danger by the absence of a red taillight and by the projection of a white light in the same dimensions as those in front. Obviously, while the violation continues uninterruptedly the violator cannot be relieved from liability when there is a materialization of the risk to which another driver upon the highway has been subjected. Foreseeable intervening forces are within the scope of defendants' original fault.[3]

In Ferraro v. Taylor, 197 Minn. 5, 7, 265 N. W. 829, 831, this court said that:

"* * * The rule seems to be well established that if the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury."

In Pattock v. St. Cloud Public Service Co. 152 Minn. 69, 72, 187 N. W. 969, 970, this court said:

" 'If a man does an act, and he knows, or by the exercise of reasonable foresight should have known, that in the event of a subsequent occurrence, which is not unlikely to happen, injury may result from his act, and such subsequent occurrence does happen and injury does result, the act committed is negligent, and will be deemed to be the proximate cause of the injury.' F. T. & S. Rothenberger v. Powers Fuel Co. 148 Minn. 209, 181 N. W. 641."

These same rules have been approved in Eichten v. Central Minnesota

---

[3] 21 Minn. L. Rev. 39.

Co-op. Power Assn. 224 Minn. 180, 28 N. W. (2d) 862, and Crawford v. Woodrich Const. Co. Inc. 239 Minn. 12, 57 N. W. (2d) 648.

Certainly the trial court was justified upon the facts in this case in holding that the negligence of plaintiff's driver was not an efficient intervening cause as a matter of law and that defendants' negligence existed as a matter of law.

Plaintiff in answering defendants' contention on the issue of intervening cause argues that the trial court could not hold as a matter of law that the defendants could not reasonably foresee that an accident of the very nature which did occur might happen; or that the jury could not reasonably find that the violation of the statute by the defendants caused the very confusion which the statute was enacted to remedy; or that the white rear light was not blinding to the driver Marlene. We agree with plaintiff's contention in that respect.

■ Defendants question whether the trial court properly ruled as a matter of law that the use of plaintiff's automobile by his daughter constituted a bailment. We must bear in mind that Marlene's father, the plaintiff, was out in the field at the time her mother gave her permission to take the car and did not know that Marlene had taken the car or that she was about to be given permission to do so; that plaintiff had given her no instructions as to where she should go or what she should do; that he received no part of the monies collected from her sale of the magazine subscriptions; and that she was not engaged in selling subscriptions on his behalf but only on her own behalf, voluntarily.

Defendants contend that because plaintiff as the father of Marlene had a legal obligation to furnish her with an education she therefore became his agent for the purpose of soliciting magazine subscriptions, even though it was a student undertaking in connection with the high school band which was an extracurricular subject with no credit towards her graduation from high school.

Defendants lay great stress on Flanagan v. Slattery, 74 S. D. 92, 49 N. W. (2d) 27, which held that where the owner permitted his wife to drive his tractor to town for the purpose of purchasing groceries and obtaining meat from the locker plant for the use of the family she

was driving it in the prosecution of her husband's business. The South Dakota court held that the denial below of a motion for a directed verdict could not be sustained on the ground that the wife was not acting as the agent of the plaintiff, her husband, at the time of the accident. That case does not indicate that that court came to its conclusion on any ground related to the performance of a legal obligation such as defendants contend for here. The case furnishes no authority for holding that the father of Marlene had a legal obligation in connection with her voluntary participation in the subscription solicitation in behalf of the Jackson High School band, any more than in connection with any other extracurricular activity in the high school which might be freely attended, such as high school football or basketball games. Needless to say, it was at all times a primary legal obligation of the plaintiff to furnish her with an education, but the facts in this case do not furnish legal persuasion that Marlene, while driving her father's car, was performing any legal obligation of her father.

In Ristau v. Riley, 230 Minn. 341, 41 N. W. (2d) 772, this court laid down a rule which we think has application here. In that case plaintiff permitted his son to use his truck for the purpose of going to Mankato to do some shopping in the evening. *It was not shown at the trial that the shopping was for the plaintiff or that the trip was connected with any purpose of his.* While in Mankato the truck was involved in a collision. The defendant's contention was that plaintiff's son was acting as his father's agent while he was using the truck. This court, however, held that it was error for the trial court to instruct that if plaintiff's son was negligent such negligence was imputable to plaintiff. It was pointed out that the existence of a parent-child relationship alone does not permit an inference that one is the servant or the agent of the other. This court said (230 Minn. 346, 41 N. W. [2d] 775):

"* * * The fact that the purpose of the trip for which the son used the truck was to do some shopping does not alter the picture, for the reason that it was not shown that the shopping was done for plaintiff or for any purpose of his. * * *

"It was error to hold by the instruction that, if plaintiff's son was negligent, such negligence was imputable to plaintiff. The son's neg-

ligence was not imputable to the father in any view—neither the father's permission for the son's use of his truck nor the existence of the parent-child relationship made it so. Because of such error, there must be a new trial."

Neither has it been shown by any competent proof in the case at bar that what Marlene did was done for the plaintiff or for any purpose of his.

Since Marlene had the right to play in the band whether she solicited subscriptions or not, her solicitation of subscriptions was wholly a voluntary endeavor on her part. See, Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945; Jacobsen v. Dailey, 228 Minn. 201, 36 N. W. (2d) 711, 11 A. L. R. (2d) 1429. See, also, Frankle v. Twedt, 234 Minn. 42, 47 N. W. (2d) 482, where it has been pointed out that a master-servant relationship or a joint enterprise relationship of such a character that it would expose the owner of the car to vicarious liability must exist; also that § 170.54 of the Safety Responsibility Act does not of itself make the bailee's negligence imputable to the bailor in an action by the bailor against a third party.[4] We think it clear that a bailment existed in the instant case as a matter of law and that the court was justified in reaching that conclusion.[5]

■ Defendants complain of the trial court's refusing to admit testimony of Arnold Alstad, leader of the Jackson High School band, that other high schools in the area follow band fund-raising activities similar to those used at the Jackson High School. Had this evidence been admitted, it would have had no bearing on the question of bailment nor would it have presented any additional evidence upon which the trial court could have predicated its decision that a bailment existed. What other bands may have done raising funds was irrelevant and

---

[4]Also see, 67 C. J. S., Parent and Child, §§ 62, 66; 5 Am. Jur., Automobiles, § 612.

[5]Also see, Currie v. Consolidated Ry. Co. 81 Conn. 383, 71 A. 356; Missouri Pac. R. Co. v. Boyce, 168 Ark. 440, 270 S. W. 519; 2 Dunnell, Dig. (3 ed.) § 735a; Restatement, Torts, § 489; 8 C. J. S., Bailments, § 56a(4); 41 Yale L. J. 832; 34 Minn. L. Rev. 57.

518

immaterial to the issues here. The situation at the Jackson High School was fully gone into and the jury fully advised in regard to Marlene's status as a member of that band. We think the trial court correctly held that a bailment existed as a matter of law.

Finally, did the trial court commit error in refusing to admit evidence to the effect that Marlene Knutson was driving under an instruction permit only? Defendants contend that evidence should have been admitted that Marlene was operating plaintiff's automobile in violation of § 171.05 in that she had an instruction permit only and did not have a licensed driver or chauffeur seated beside her at the time of the accident; further that the trial court committed error in denying defendants' motion after the verdict to make their offer of proof regarding the violation of § 171.05 a part of the record prior to the resting of defendants' case, nunc pro tunc.

In Mahowald v. Beckrich, 212 Minn. 78, 2 N. W. (2d) 569, it was held error for the trial court to permit plaintiff's counsel on cross-examination to ask the defendant whether he had a driver's license at the time of the accident. This court stated (212 Minn. 81, 2 N. W. [2d] 572):

"An unlicensed driver is neither barred from recovering for injuries received by himself in an automobile accident nor liable as a matter of law for injuries sustained by another, because there is no causal connection between his failure to comply with the licensing statute and the accident. [Cases cited.] For similar reasons, it is held that lack of a driver's license in violation of statute is not even evidence of negligence. [Cases cited.] The Massachusetts court has taken the view *contra* that failure to have a driver's license is some evidence of negligence. [Cases cited.] *However, this is strictly a minority rule and is opposed to what we feel to be the sounder reasoning.*" (Italics supplied.)

Counsel for defendants in the instant case was permitted on cross-examination to cover in detail Marlene's previous driving experience. The question whether plaintiff was negligent in permitting her to drive was presented to the jury in the court's charge. Evidently the trial judge decided that, under the peculiar circumstances of this case, it

was for the jury to determine whether plaintiff had been negligent in permitting Marlene to drive and whether defendants' negligence was a proximate cause of the accident, which issues the jury resolved against the defendants. There was no limitation placed on defendants' bringing out any information they chose as to Marlene's previous driving experience and her driving ability. Under our decisions, which have adopted the majority view, whether she was driving with a driver's license or an instruction permit, or with no license at all, is not material. As already made clear, contributory negligence of the plaintiff was submitted to the jury in the court's instructions. More could not have been done, as stated in the trial court's memorandum, had the offer on the license issue been made and received.

Defendants took no exceptions to the court's charge. This can be fully understood since the jury was given a wide latitude to pass upon the fact issues submitted for their determination. We are unable to detect any prejudicial error in the trial court's charge, its rulings during the trial, or its order denying judgment notwithstanding the verdict or a new trial. The order appealed from is affirmed.

Affirmed.