Gerald G. RIEGER, Respondent,

v.

Michael ZACKOSKI, Defendant,

Brainerd International Raceway,
Inc., Appellant.

No. 51219.

Supreme Court of Minnesota.

June 25, 1982.

Dean K. Johnson, Bloomington, for appellant.

Gerald G. Rieger, pro se.

Daniel B. O'Leary, St. Paul, for respondent.

ROGOSHESKE, Justice.*

This is an appeal taken by defendant Brainerd International Raceway, Inc. (hereinafter BIR) from a judgment and order of the trial court whereby BIR was held to be 32% responsible for plaintiff Gerald Rieger's personal injuries suffered in a one-car accident occurring on defendant BIR's premises. BIR claims that the trial court erred in submitting to the jury the issue of whether Rieger was an entrant or trespasser; in its instructions regarding the applicable standard of care; in failing to instruct the jury on the issues of superseding cause and primary assumption of risk; and in failing to direct a verdict for BIR because the evidence was not sufficient to sustain the jury's apportionment of negligence. We affirm.

The accident occurred on the BIR racetrack between the hours of 4:30 and 6 o'clock p. m. on Sunday, August 15, 1976, after the races for the day had concluded. The automobile was driven by Rieger's friend and fellow spectator, defendant Michael Zackoski. Rieger and Zackoski were members of a large party of friends and acquaintances, all approximately 19 years old, who attended BIR on the weekend of August 14 and 15. This group observed the auto races on both days and camped overnight on the infield grounds of the racetrack. This was Rieger's first visit to BIR.

In order properly to understand the unusual circumstances of the accident in question, it is necessary initially to describe in some detail the physical layout of BIR. The racetrack is privately owned and operated, and is located off of State Highway No. 371 near the city of Brainerd. The track itself is 3 miles long and has a total of 10 turns: three banked corners and several "S" curves which compose the fourth side of the track. The main entrance is located near turn 10. After purchasing tickets, a spectator driving straight ahead will cross a bridge spanning the racetrack and then will enter the infield area. Alternatively, one may turn sharply to his left and drive along a service road situated outside of the black-top track. This "paddock road" leads to three race support areas known as the paddock, the grid, and the pits. The grid is located to the outside of corner one, while the paddock and pits border the long straightaway between corners one and two. To enter the paddock road, one must drive past a gate posted with a "restricted area" sign. Similar signs are posted at the grid and pits entrances.

The "infield" composes the rest of the BIR property and is located inside of the track. Management encourages the use of the infield by spectators and sells "camping passes" which permit spectators to stay overnight in that area to watch the weekend races. This pass states: "Bearer agrees to BIR camping Rules and Regulations (see reverse) * * *. 2. All campers must remain in the fenced area." Both the president/manager and the chief of security are well aware that much partying and alcohol consuming regularly occur in the infield. Furthermore, both acknowledge that spectators have occasionally gone beyond the fenced area to retrieve frisbees, footballs or other items during nonracing periods. Rieger and his friends had purchased camping passes for the weekend of August 14 and 15.

The infield is bounded by a continuous wire fence about 3 to 4 feet in height. The fence has a large rectangular pattern and is supported by metal posts approximately every 15 feet. The infield fence is sagged from 4 to 8 inches in several places around the track, including the area between turns two and three (the scene of the accident). This sagging is due to the activity both of authorized racing event workers and of unauthorized spectators. The authorized personnel, known as "corner workers," leap over the infield fence to perform various duties during a race.

The fence is located between 40 and 65 feet from the white line marking the inner edge of the track. The area between the fence and the track is a flat, grassy field.

* Retired Justice acting pursuant to Minn.Stat. § 2.724.

On the afternoon in question, Rieger, Zackoski, and others viewed the day's races from the infield. Immediately after the program concluded for the day, Zackoski and others observed a blue Volkswagen driving on the track. The car had no markings or other signs of official authorization and appeared to them to be a spectator's vehicle. The sight of the Volkswagen inspired Zackoski and another member of the party, Steve Herges, to attempt to gain access to the track to complete a lap. Zackoski knew from past experience that special passes, which they did not have, were needed to enter the paddock area.

Herges, in his van, and Zackoski, in his Pinto, then exited the infield over the bridge at the same time as other spectators in the infield were leaving the racetrack. Both vehicles, carrying passengers, then turned down the service road toward the paddock area. With Herges in the lead, they stopped at the paddock gate just past the "restricted area" sign. At this point, Zackoski observed Herges gesturing to two men nearby who were wearing the blue uniforms of the BIR security force.[1] Although the racetrack security men were responsible for escorting all patrons safely out of the BIR facilities at the conclusion of the races and for preventing unauthorized access to the paddock area and the track, the men at this gate did not prevent Herges and Zackoski from entering the paddock.

Both spectators then proceeded through the paddock and pits and drove onto the track, completely unhindered by the BIR security. They drove around the track in the same direction as the racers, honking their horns while their passengers waved to their friends in the infield as they passed the campsite. Their friends responded by hopping the low infield fence and moving toward the track, shouting and waving. As Zackoski, now in the lead, began his second circuit around the track, plaintiff Rieger decided to join Zackoski in the Pinto and ride around the track. Rieger moved toward the track and stationed himself about 7 feet inside the white line marking the inner edge of the track. The track is 30 feet wide at this point. Rieger stood still and began crossing and uncrossing his arms over his head in an attempt to stop the Pinto and ride along with Zackoski. Rieger was clearly visible from the view of the Pinto's occupants at a distance of about 300 yards. Zackoski did not reduce the Pinto's speed, which was about 50–55 miles per hour. When Rieger realized that Zackoski was not going to stop, he took a few steps toward the infield. The Pinto, traveling straight ahead and at full speed, struck Rieger causing very severe and multiple injuries and some permanent partial disability.

No track officials waved Zackoski off of the track. The security chief testified that neither he nor any of his employees observed either the Pinto or the van on the track prior to the accident. He also testified that, to gain entry to the track, those vehicles must have driven past at least one BIR security guard. These guards were supposed to permit only authorized vehicles to enter the restricted areas.

At the conclusion of the presentation of the evidence, the trial court ruled as a matter of law that both Rieger and Zackoski were negligent and that their negligence proximately caused the accident. In a special verdict, the jury found Rieger to be 18% negligent, Zackoski to be 50% negligent, and defendant BIR to be 32% negligent. It also found total damages to Rieger in the amount of $185,607.[2]

Five issues have been raised by BIR on appeal. They are:

1. Did the district court commit reversible error by submitting to the jury the issue of the status of Rieger, rather than decid-

---

1. On August 15, there were a total of 14 BIR security men positioned around the raceway charged with the responsibility for maintaining security at all of the gates—including the gates along the paddock road—and for generally supervising the racetrack.

2. During the trial, Rieger executed a *Pierringer* release with Zackoski which obligated the latter to pay $25,000 to Rieger. This release has not been challenged.

ing that Rieger was a trespasser as a matter of law?

2. Did the district court err by improperly instructing the jury on the applicable standard of care?

3. Did the district court commit reversible error by refusing to instruct the jury on the issue of superseding cause?

4. Did the district court commit reversible error by refusing to instruct the jury on the issue of primary assumption of risk?

5. Was the evidence sufficient to uphold the jury's verdict?

1. Defendant BIR contends that it was error for the trial court to permit the jury to decide whether Rieger was an entrant or trespasser because, as a matter of law, Rieger was a trespasser. 4 Minn. Dist. Judges Ass'n, Minnesota Practice, JIG II 325 G–S (2d ed. 1974), defines a trespasser as one who enters or remains on the premises without the express or implied consent of the possessor of land. This was the instruction given to the jury.

■ The trial court acted properly in permitting the jury to decide this issue. There is some evidence of BIR's "implied consent" stemming from the following facts: (a) the races were conclusively ended, a time in the past when management apparently acquiesced in spectators hopping the infield fence; (b) the construction and height of the infield fence (as opposed to the 8-foot high, barbed-wire topped exterior fence) was clearly not sufficient to prevent the spectators from going onto the track; (c) the sagging condition of the fence; (d) the unexplained presence of the blue Volkswagen on the track Sunday afternoon; and (e) the ability of Zackoski and Herges to remain on the track for a second lap without interference from BIR security. These facts raise a jury question as to whether BIR's limited consent granted on its camping pass was expanded. *Cf. McGenty v. John A. Stephenson & Co.*, 218 Minn. 311, 15 N.W.2d 874 (1944) (Held, it was proper for jury to decide scope of an express oral permission which was in doubt).

■ Even assuming that the trial court erred, we find that such error was not prejudicial. The court also instructed the jury of a landowner's duty to trespassers. Therefore, it is possible that the jury found BIR liable even though it decided that Rieger was a trespasser. Finally, the court carefully instructed the jury twice that an entrant may become a trespasser by moving beyond the scope of the possessor's invitation or permission.

■ 2. BIR next contends that the district court erred by instructing the jury that, assuming Rieger is found to be an entrant, BIR owed a duty of "a high degree of care" to Rieger. It argues that the trial court should have disregarded the "garbled and confusing guidance" set out by this court in *Yogerst v. Janish*, 303 Minn. 33, 226 N.W.2d 291 (1975), and simply instructed the jury that BIR owed a duty of "reasonable care" to Rieger.

We find that the trial court's instructions on the applicable duty of care were clear, precise, and legally correct. Although it did state that BIR had a "high degree of care" owed to Rieger as an entrant, it also stated that this duty was one of "reasonable care under the circumstances." The latter is an accurate statement of the law with respect to a landowner's duty of care. *Yogerst v. Janish; Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639 (1972); *Hanson v. Christensen*, 275 Minn. 204, 145 N.W.2d 868 (1966). Furthermore, we find that reasonable care in the circumstances of this case—high speed raceway, alcoholic beverages consumed throughout the weekend, place of amusement operated for profit by possessor—*would* entail a high degree of care. The duty increases as the risks, which the proprietor to some extent encourages, increase. *Yogerst v. Janish; Hanson v. Christensen; Lindgren v. Voge*, 260 Minn. 262, 109 N.W.2d 754 (1961).

3. BIR next contends that the trial court erred by not instructing the jury on the question of superseding cause. In *Kroeger v. Lee*, 270 Minn. 75, 132 N.W.2d 727 (1965), we listed the prerequisites to giving such an instruction:

For a cause to be superseding, the following elements must be present: (1) Its harmful effects must have occurred after the original negligence; (2) it must not have been brought about by the original negligence; (3) it must actively work to bring about a result which would not otherwise have followed from the original negligence; and (4) it must not have been reasonably foreseeable by the original wrongdoer.

*Id.* at 78, 132 N.W.2d at 729–30. *See also* Minn. Dist. Judges Ass'n, Minnesota Practice, JIG II, 142 G–S (2d ed. 1974). These four elements are present, BIR claims, because of the conjunction of unusual events leading up to the accident. Zackoski's negligent action in failing either to slow the speed of his automobile or to avoid contact with his friend Rieger on the racetrack is the intervening act which BIR claims supersedes its own negligence in this matter. Because we find that elements (2) and (4) of the *Kroeger* test were not met by the facts of this case, we hold that the trial court did not err in refusing the proffered superseding cause instruction.

■ Initially, we note that it cannot be denied that there is ample evidence to permit a jury to find that BIR was negligent in failing to prevent Zackoski and Herges from gaining access to the racetrack proper. On August 15, 1976, BIR had a security force of significant size positioned around the facility specifically charged with the responsibilities of insuring that its patrons, the spectators, left the premises safely and that unauthorized drivers not move onto the track. The latter responsibility was clearly and negligently unfulfilled in this case. But for BIR's substantial negligence in this regard, Zackoski could not have gained access to the track and driven in a negligent manner, and the accident would not have occurred. BIR's negligence let loose a continuing force which culminated in Rieger's injury. Therefore, we find that the opportunity for Zackoski's negligence was in fact created and "brought about by the original negligence" of BIR. *See* Restatement (Second) of Torts, §§ 442 A, B (1966).

■ Furthermore, as recognized by the parties and by the court below, the question of whether an intervening act is a superseding cause in the law often turns on the question of whether that act was a foreseeable consequence of the original actor's negligence. *See Knutson v. Nielsen*, 256 Minn. 506, 514, 99 N.W.2d 215, 220 (1959). We note that "[t]he foreseeability of intervening causes is to be determined as of the time of defendant's acts or omissions." *Johnson v. Clement F. Sculley Construction Co.*, 255 Minn. 41, 52, 95 N.W.2d 409, 417 (1959) (quoting 13 Dunnell, Dig. (3 ed.) § 7005(6)). Therefore, BIR is incorrect in arguing that the *specific* conduct of the third party must be foreseeable. It is sufficient to establish a lack of superseding cause that the unreasonable risk of harm attributable to the third party's conduct be foreseeable. *Rum River Lumber Co. v. State*, 282 N.W.2d 882, 884 (Minn.1979). This is consistent with the majority rule:

If the actor's conduct has created or increased the risk that a particular harm to the plaintiff will occur, and has been a substantial factor in causing that harm, it is immaterial to the actor's liability that the harm is brought about in a manner which no one in his position could possibly have been expected to foresee or anticipate.

Restatement (Second) of Torts, § 442B, comment b (1966).

■ In the instant case, BIR management testified that it was aware of the dangers inherent in having unauthorized drivers on the racetrack at any time when the facility was open to the public. Therefore, at the time Zackoski, in his automobile, gained access to the track, it was foreseeable to BIR that some type of accident resulting in injury could occur. The precise conjunction of events which followed was certainly unusual, but the fact that an accident resulted from BIR's negligence was not. We note at this point that BIR's original negligence was compounded by its continuing negligent failure to wave Zackoski off the track after he began his first lap.

Since the risk that some kind of harm would ensue from BIR's negligence was foreseeable, we hold that it was not error for the court to refuse to instruct on superseding cause. *Kroeger v. Lee,* 270 Minn. 75, 132 N.W.2d 727 (1965); Restatement (Second) of Torts, § 442B, comment b (1966).[3]

■ BIR also argues that, even if it was negligent in permitting Zackoski to reach the racetrack, Rieger's act of moving onto the track from the infield itself constitutes a superseding cause. We do not find such action by a 19-year-old, first-time visitor to the racetrack to be unforeseeable, especially when one considers that it was not uncommon for spectators to leap the low, infield fence during nonrace periods for a variety of reasons. Once Rieger viewed his friends driving around the track, a situation created by BIR's negligence, it does not seem unusual that he would wish to accompany them around the track. *See* Restatement (Second) of Torts, § 443, and comment b (1966) (intervening force which is normal consequence of situation created by actor's negligence is not superseding cause; "normal consequence" is defined within context of event as not an extraordinary response to situation).

BIR refers us to prior decisions of this court involving automobile accidents on public roads which resulted in holdings absolving the negligent actor because of the superseding negligence of a third-party driver. *See, e.g., Strobel v. Chicago, Rock Island & Pacific R. Co.,* 255 Minn. 201, 96 N.W.2d 195 (1959); *Sims v. Hallett Construction Co.,* 247 Minn. 339, 77 N.W.2d 54 (1956). We find these cases distinguishable precisely because they occurred on public highways where the statutory "rules-of-the-road" operate and drivers are expected to use reasonable care in maintaining their vehicles. In contrast, the accident herein took place at a private racetrack, a facility designed for the purpose of high-speed driving. Its management invited paying customers onto its grounds for the express purpose of providing, for profit, a dangerous and exciting entertainment. It thereby created a controlled environment in which it could, and did, expect exuberant and excited spectators to attempt to emulate the high-speed racers at great risk to all in the area. That is a major reason for the existence of its security force. Therefore, BIR's expectations with respect to the degree of care which unauthorized drivers would apply on the track should have been, and were, radically different from those an ordinary party could expect from a third-party driver on the public highways. In short, what may constitute a superseding, because unforeseeable, cause in the context of public roads may well be foreseeable in the very different context of a private, high-speed raceway facility.

■ This is perfectly consistent with superseding cause doctrine. As we noted in *Mikes v. Baumgartner,* 277 Minn. 423, 429, 152 N.W.2d 732, 737 (1967):

What is an intervening or superseding cause that will insulate the negligence of an original wrongdoer is, like many other areas in the law of negligence, something that is not easy to define. There is no absolute yardstick by which it can be measured. Each case must more or less stand on its own facts.

A review of the facts in this case leads us to conclude that neither the actions of Rieger nor of Zackoski met the *Kroeger* conditions

---

**3.** We recognize that Zackoski's failure to swerve or to use his brakes prior to colliding with Rieger is nettlesome. If it were shown that Zackoski acted deliberately in a tortious manner then, of course, we would conclude that a superseding cause instruction would be required. *See* Restatement (Second) of Torts, § 448 (1966).

The record, however, did not reveal any evidence whatsoever tending to establish that Zackoski acted intentionally tortiously. Furthermore, such a claim was not argued to this court on appeal either in the brief or oral argument of appellant BIR. Based upon the record, we can conclude only that Zackoski acted negligently without intent to harm Rieger. Third-party negligence that the original negligent actor should have realized might result from his own negligence does not relieve that actor from liability produced by the third party's intervening negligent act. *Id.* at § 447; *see also id.* at § 442B and comment b.

and therefore neither was a superseding cause of the accident. Since the question of the foreseeability of the intervening act is one initially for the trial court, *Strobel*, 255 Minn. at 208, 96 N.W.2d at 201, we find that the trial court did not err in refusing to submit the superseding cause instruction to the jury.[4]

■ 4. BIR next contends that it was error for the trial court not to instruct the jury per 4 Minn. Dist. Judges Ass'n, Minnesota Practice, JIG II, 135 G (2d ed. 1974), on the issue of primary assumption of risk. Recently, in *Armstrong v. Mailand*, 284 N.W.2d 343 (Minn.1979), we explained the difference between primary and secondary assumption of risk:

> "Primary assumption of risk, express or implied, relates to the initial issue of whether a defendant was negligent at all—that is, whether the defendant had any duty to protect the plaintiff from a risk of harm. * * * The limited duties owed licensees upon another's property * * * are illustrative."
>
> On the other hand, secondary assumption of risk is a type of contributory negligence where the plaintiff voluntarily encounters a known and appreciated hazard created by the defendant without relieving the defendant of his duty of care with respect to such hazard.

*Id.* at 349 (quoting *Springrose v. Willmore*, 292 Minn. 23, 24, 192 N.W.2d 826, 827 (1971)).

The issue on appeal, therefore, is whether the jury should have been permitted to decide whether BIR's duty of care to Rieger, as a patron, was relieved absolutely by Rieger's action in moving onto the racetrack. Had Rieger leaped the low infield fence, moved toward the track, and suffered injury *during* a sanctioned auto race, then it would be clear to us that he would have assumed the risk of injury in a primary manner. While the races were in progress, there is absolutely no doubt that BIR acted to maintain the integrity of the infield fence and its camping pass rule. There was no evidence admitted about spectators leaping that fence during the races. Therefore, there would be no question but that Rieger would be entering knowingly into a hazardous area without any permission by BIR. The primary assumption of risk in such a case would be patent.

That is not this case, however. In the instant case, Rieger leaped the infield fence along with the rest of his camping friends *after* the races had concluded for the day. This was the time when, with management's knowledge, if not acquiescence, spectators leaped the fence and moved toward and onto the track for a variety of reasons. To a first-time patron of BIR such as Rieger, leaping the fence may well have been presumed to be acceptable to BIR at that time of the day. This conclusion in Rieger's mind was undoubtedly bolstered by the appearance of his friends in their automobile on the track. Such a state of mind is much more consistent with *Armstrong's* description of secondary rather than primary assumption of risk.

BIR had a duty to safely escort Rieger off of the racetrack's premises at the conclusion of the weekend's races. BIR had a further duty to protect its patrons against the unreasonable risk of harm arising from unauthorized vehicles racing around the track, a risk in this case created by BIR. The trial court properly perceived such

---

4. We note, without placing reliance upon, the recent case of *Conover v. Northern States Power Co.*, 313 N.W.2d 397 (Minn.1981), in which this court held that it was harmless error for the trial court to give a requested jury instruction on the duties of a possessor of land. We stated there that,

> It is clear the trial court should have given the requested jury instruction * * *. Since, however, the general instruction on negligence required the jury to consider all of the circumstances involved in causing the injury

and counsel were free to argue, and did argue, their respective positions on these facts and circumstances to the jury, we find, in the context of this trial, no reversible error in not giving [the requested instructions].

*Id.* at 402. In the instant case, the jury had been informed that Rieger and Zackoski were negligent as a matter of law, and were instructed generally on negligence and comparative fault in such a way as to require them to "consider all of the circumstances involved in causing the injury."

duties to be, in the circumstances of this case, continuing ones owed by BIR to Rieger. Therefore, it would not have been proper to instruct the jury on primary assumption of risk.

BIR argues nonetheless that, because Rieger had the time and clear view to observe the speed of the oncoming Pinto and failed to avoid the collision, BIR's duty to exercise control over Zackoski may have been relieved. Such an argument lacks force. The very purpose for restricting access of automobiles to the track was to prevent accidents of the type which occurred in this case. To hold as BIR suggests would be to relieve BIR of all liability whenever it could be shown that an injured spectator observed the speed of an unauthorized vehicle. This is so because the other suggested factor—the spectator's failure to move enough to avoid the collision—will, of course, always be present. Such a standard is far too lax, especially in light of BIR's negligence. *Cf. Bakhos v. Driver*, 275 N.W.2d 594 (Minn.1979) (no primary assumption of risk where plaintiff did not have "certain knowledge" of defendant's negligence).

Because we find that the facts do not support a theory absolutely relieving BIR of liability on the ground that BIR was not "negligent at all," we conclude that the trial court did not err in failing to submit this issue to the jury.

5. Finally, BIR challenges the jury's verdict and apportionment of negligence. Determination of the verdict and assignment of fault are the primary functions of the jury. Therefore, a party challenging these results must meet a very substantial burden: this court will not reverse a jury unless the verdict or apportionment is "manifestly and palpably contrary to the evidence * * *." *Sandhofer v. Abbott-Northwestern Hospital*, 283 N.W.2d 362, 368 (Minn.1979). *Accord, e.g., Gordon v. Hoffman*, 303 N.W.2d 250 (Minn.1981); *Martin v. Bussert*, 292 Minn. 29, 193 N.W.2d 134 (1971).

BIR has not met this burden in this case. There is sufficient evidence from which a jury could conclude that defendant BIR was negligent: its failure to prevent Zackoski from entering the racetrack, its failure to wave Zackoski off of the track once he began his laps, and its failure to keep spectators from traversing the area outside of the infield fence.

The above-cited facts are also relevant to the apportionment of negligence challenge. Additionally, there was evidence showing that BIR acquiesced in spectators leaping the infield fence during nonrace periods. On this evidence, plus the fact that Rieger was a first-time patron, the jury could reasonably have found that plaintiff was less negligent than BIR. *See Flom v. Flom*, 291 N.W.2d 914, 917 (Minn.1980).

Although the specifics of this case are certainly unusual, upon considered reflection, we find that nothing more is involved herein than the application of settled rules of law. The district court correctly applied these settled rules in the instant case. Therefore, we affirm the judgment and order of the trial court.

Affirmed.

KELLEY, J., took no part in the consideration or decision in this case.

OTIS, Justice (dissenting).

The opinion of the majority is correct when it refers to the "unusual circumstances" of this case. A brief review of the facts indicates that the circumstances are indeed extraordinary.

Appellant Brainerd International Raceway, Inc. (BIR) is the owner of an automobile racetrack. Races are customarily held during summer weekends, and spectators may view the action from either a grandstand or an infield area which is separated from the track by a fence. On the day of this accident, plaintiff Rieger and defendant Zackoski, both about 19 years old and close friends, were infield spectators of the races. After all races were completed and the spectators were departing, Zackoski and another friend, Herges, apparently saw a car on the track. Thereupon they drove

their own cars onto the track, eluding BIR security guards who were preoccupied with directing traffic on the main highway.

While driving around the track, the cars of Zackoski and Herges were seen by Rieger. He jumped the infield fence and walked out onto the racetrack. By then the Herges car had been discovered by BIR security guards, and waved off the track. The Zackoski car, however, went for another lap. While the Zackoski car was still some 300 yards away, Rieger began to wave his arms in an attempt to stop the car so he could be picked up. Rieger was clearly visible, waving his arms like a semaphore, but the Zackoski car made no effort to slow down or to otherwise avoid striking Rieger, although there was ample opportunity to do so. Rieger was hit and severely injured.

Under these circumstances, in my opinion, the trial court's failure to give an instruction on superseding cause was prejudicial error which requires a new trial.

In applying the rule of superseding cause, a defendant's antecedent negligence is immaterial. It may well be that BIR was negligent in allowing Zackoski on the racetrack. However, the totally unforeseeable behavior of Rieger and Zackoski should, in my opinion, justify a jury's relieving appellant of liability even if the original negligence was a substantial factor in bringing about the accident. Restatement (Second) of Torts § 440 comment b (1965) provides:

A superseding cause relieves the actor from liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm. Therefore, if in looking back from the harm and tracing the sequence of events by which it was produced, it is found that a superseding cause has operated, there is no need of determining whether the actor's antecedent conduct was or was not a substantial factor in bringing about the harm.

I have no quarrel with the holding in *Kroeger v. Lee,* 270 Minn. 75, 132 N.W.2d 727 (1965) cited by the majority. But where there is a reasonable doubt as to the foreseeability of the intervening acts, supersed-

ing cause becomes a jury question. *Sandhofer v. Abbott-Northwestern Hospital,* 283 N.W. 362 (Minn.1979); *Kroeger v. Lee,* 270 Minn. 75, 132 N.W.2d 727 (1965); *Strobel v. Chicago, Rock Island & Pacific R.,* 255 Minn. 201, 96 N.W.2d 195 (1959).

In this case there can be little doubt but that the failure of Zackoski to brake or swerve to avoid striking Rieger was unforeseeable by appellant. It approaches willful and wanton negligence.

Under very similar facts we affirmed a jury instruction on superseding cause in *Strobel v. Chicago, Rock Island & Pacific R.,* 255 Minn. 201, 96 N.W.2d 195 (1959) where a railroad employee, following the orders of his employer, placed a ladder in the middle of a bridge used for automobile traffic in order to make repairs on an overhead deck. The employee was on the ladder when it was struck by a car driven by one Heilman, injuring the employee. The employer claimed that the intervening acts of Heilman amounted to a superseding cause, and this court stated:

Although it was reasonably foreseeable that Heilman and other motorists would be driving over the bridge in the lane in which plaintiff had placed the ladder, we cannot hold as a matter of law that it was reasonably foreseeable that Heilman, who entered upon the bridge in low gear at a speed of about 8 miles per hour, and who admittedly killed his motor after driving 50 to 70 feet on the bridge, would drive an additional 200 or more feet (or a total bridge distance of 275 feet) without seeing directly in front of him plaintiff on a ladder in a position of peril without taking steps to avoid the collision. Whether, under the circumstances, Heilman's failure to stop or take other steps to avoid colliding with plaintiff's ladder was an intervening and proximate cause which broke the chain of causation from any prior negligence of the Rock Island was for the jury. Where a second-party tortfeasor as the driver of an automobile approaches plaintiff, who is in plain sight and in a position of obvious peril for a sufficient length of time to enable such

driver in the exercise of reasonable care to avoid a collision, and he fails to do so, the driver's failure to act so as to avoid the collision is an efficient, intervening and proximate cause of plaintiff's injuries which breaks the natural sequence and progression of the original tortfeasor's negligence as a proximate cause.

*Id.* at 209–10, 96 N.W.2d at 202 (footnote omitted); *accord Barrett v. Nash Finch Co.,* 228 Minn. 156, 36 N.W.2d 526 (1949).

The majority would distinguish these cases by noting that here a racetrack rather than a public highway is involved. But unlike the claim of the driver in *Strobel,* Zackoski had no other vehicles to distract him. He had the entire racetrack to himself. To compound the inevitability of an accident, Rieger did nothing to protect himself.

It is hard to imagine more foolhardy behavior than to run out in the middle of a racetrack with a speeding car bearing down. No proprietor should be expected to anticipate behavior bordering on madness. BIR's liability for its antecedent negligence should not encompass such extraordinary consequences as those resulting from the intentional, unpredictable acts of Zackoski and Rieger. *See* Restatement (Second) of Torts § 442 and comments (1965).

*Strobel* and similar cases make clear that the antecedent negligence of a defendant may result in liability for intervening acts of ordinary negligence, but not for gross and unpredictable negligence. *See* W. Prosser, *The Law of Torts* 282 (4th ed. 1971). I would remand for a new trial.

PETERSON, Justice (dissenting).

I join in the dissent of Justice OTIS.

TODD, Justice (dissenting).

I join in the dissent of Justice OTIS.