## JETHRO FORD v. KLINE OLDSMOBILE, INC.

143 N. W. (2d) 209.

June 10, 1966—No. 40,013.

*Tyrrell, Jardine, Logan & O'Brien* and *Ross M. Muir,* for appellant.
*Feinberg, Mirviss, Meyers, Schumacher & Malmon,* for respondent.

ROGOSHESKE, JUSTICE.

Defendant appeals from an order denying its alternative motion for judgment notwithstanding or a new trial of an action arising out of a collision between two automobiles at an intersection in the city of St. Paul.

On October 11, 1962, at about 11:30 a. m., at the right angle intersection of Sherburne and Mackubin Streets, defendant's employee, driving a Fiat east on Sherburne, collided with a Pontiac within the intersection as it was proceeding north on Mackubin. The Pontiac was being driven by plaintiff Ivory Ford with the permission of the wife of the owner, plaintiff Jethro Ford. Plaintiff Ivory Ford sued for damages to his person, and plaintiff Jethro for damages to his Pontiac. The actions were merged for trial. The jury, by answers to three special questions, found that both drivers' negligence caused the accident and that plaintiff Ivory Ford sustained damages to his person of $500.

Defendant seeks to reverse the order denying a new trial upon the claim that the municipal court erred in holding there was a bailment of the Pontiac as a matter of law and therefore the driver's negligence was not imputed to the owner,[1] entitling plaintiff Jethro Ford to recover the stipulated damage to his Pontiac of $421.55. Defendant claims that the evidence requires submission of the issue of bailment to the jury.

The only testimony submitted on that issue was by the driver, Ivory

---

[1] Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945.

Ford. He stated he walked to Jethro Ford's home and asked his brother's wife if he could use Jethro's Pontiac to take his (Ivory's) clothes to the cleaners. She gave her permission and then asked if he would also take some of her clothes and some of Jethro's to the same cleaner. He agreed, and took Jethro's two young children along for the ride.

We must agree with the trial court that these facts compel the finding of a bailment as a matter of law [2] unless we find it was improper for the court to deny defendant's offer of a written statement given by plaintiff Ivory Ford to an insurance adjuster 11 days after the accident. The statement included recitals claimed to have been made by Ivory to the effect that he was using the automobile for the sole purpose of taking clothes belonging to Jethro's family to the cleaners and other statements substantially inconsistent with his testimony at trial concerning facts bearing on the issue of negligence. Had the statement been received into evidence, the issue of bailment would have been for the jury.

Defendant's attempts to introduce the statement, based upon cross-examination of Ivory, were unsuccessful. It was rejected upon the ground of insufficient foundation. Admitting that he gave a statement to an undisclosed insurance adjuster and identifying his signature on the writing exhibited to him, Ivory Ford repeatedly denied receiving a copy, as required by Minn. St. 602.01,[3] insisting that his use of the vehicle was to serve himself and only incidentally to save Jethro's wife a trip to the cleaners. In order to rescue the statement, defendant moved for an adjournment of trial until the following day to gain sufficient time to procure as a witness the insurance adjuster who took the statement, thereby presumably providing the necessary foundation. This motion, however, was also denied, and we believe properly so.

---

[2] Knutson v. Nielsen, 256 Minn. 506, 99 N. W. (2d) 215. See, also, Frankle v. Twedt, 234 Minn. 42, 47, 47 N. W. (2d) 482, 487, where we declared that *"incidental courtesy extended by a bailee to a bailor"* will not destroy a bailment relationship.

[3] Minn. St. 602.01 provides: "* * * No statement can be used as evidence [in an action for personal injuries] in any court unless the party so obtaining the statement shall give to such injured person a copy thereof within 30 days after the same was made."

Defendant's request for an adjournment and, as the record shows, his first attempt to contact the additional witness were not made until the close of testimony late in the day of trial. We agree with the trial court that such eleventh-hour practices cannot be justified where, as here, the trial was set for a date certain and known to defendant weeks in advance. It was incumbent upon defendant to foresee the possible importance of the witness to its defense. Bearing in mind the heavy schedule of trials, the court, in proper exercise of its discretion, could deny an adjournment which if granted would unreasonably extend the length of trial and disrupt the orderly disposition of pending cases. Moreover, we are not persuaded that production of defendant's witness would have cured the foundational defects of the statement. Ivory Ford's testimony establishes that he could neither read nor write. Though he admitted giving a statement and identified his signature, he could not recall making any of the crucial statements contained therein relevant to the issues of bailment and of defendant's liability to him for personal injuries. As noted, he denied that he had ever received a copy. Defendant's offer of proof does not assert that its witness would testify that Ivory Ford can in fact read and write nor that a copy was in fact furnished as required. Thus the court correctly ruled the statement inadmissible and also, we conclude, properly denied the motion for adjournment. It follows that the uncontradicted evidence establishes a bailment as a matter of law.

Defendant's additional two claims—that as a matter of law Ivory Ford's negligence was the sole cause of the accident and that the trial court erred in advising the jury of the stipulation concerning the amount of damages to Jethro's car (mentioned without objection in plaintiff's closing argument to the jury)—are clearly without merit.

Affirmed.