## JOHN CORCORAN AND ANOTHER v.
## ROGER PERRY, d.b.a. PERRY'S FURNITURE STORE.

162 N. W. (2d) 718.

November 8, 1968—No. 41116.

*K. L. Wallace,* for appellant.
*Winter, Lundquist & Sherwood,* for respondents.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Sheran, JJ.

SHERAN, JUSTICE.

Appeal from a judgment of the district court and from an order denying defendant's motion for a new trial.

On February 22, 1959, Mildred Corcoran fell on premises owned by defendant at Alexandria, Minnesota. An action instituted to recover the damages sustained resulted in a verdict of $15,000 for her and a $500 verdict for her husband, John Corcoran. The post-trial motion was denied and judgment entered.

It is contended in this court (1) that the jury's determination of liability is not sustained by the evidence; (2) that the damages awarded are excessive; and (3) that a new trial should be ordered because:

(a) Pictures of the accident site taken by plaintiff John Corcoran were not produced at trial, and the trial court erred in refusing this requested instruction:

"Where a party to a lawsuit fails to produce material evidence within that party's control and normally expected to be produced by that party, without satisfactory explanation, you are permitted to infer that the evidence, if produced, would have been unfavorable to that party."

(b) Defendant (informed of a post-accident life insurance application submitted by Mildred Corcoran and having demanded disclosure of the name of the insurer by interrogatories served prior to trial) should not have been required to proceed with the trial of the case until the name of the insurer was disclosed and the defendant given sufficient time to examine the application for impeaching material; further, the trial of the case having been completed before the application was made available to defendant, a new trial should now be granted so that defendant will

have the opportunity to confront plaintiff Mildred Corcoran with statements made by her in the application for life insurance which are inconsistent with her injury claims at trial.

■ The evidence is adequate to support a finding that plaintiff Mildred Corcoran, while walking on a concrete platform constituting a part of defendant's premises at a time when her status was business visitor, slipped and fell on a thin sheet of ice covered with water which had dripped from an overhanging canopy and collected there. If she fell on this water-covered ice as she claims, it is clear that the issues of negligence and contributory negligence were for the jury.[1] Defendant presented evidence which would support an inference that she fell while she was stepping from the platform to a graveled surface driveway below. This evidence was not, however, so compelling as to bind the jury. The determination of liability therefore is sustained by the evidence.

■ Eight years elapsed between the time the accident occurred and the time of trial. During all this interval, according to plaintiff Mildred Corcoran, she suffered severe pain in the left arm, her back, and in her left lower extremity which, in turn, produced discomfort, fatigue, and irritability which prevented her from adequately performing her duties as a mother and housewife. Although the issue was disputed at trial, the jury was justified in finding a causal relationship between the accident trauma and the physical and emotional consequences attributed to it by plaintiffs. This being the case, the jury was justified, we feel, in concluding that the pain and disability which had persisted for the 8 years between the time of the accident and the time of the trial would continue to cause difficulty in the future in some degree at least, although the medical testimony submitted by plaintiffs on this phase of the matter was, at best, equivocal.[2] With some misgivings, we accept the determination of the trial court with respect to the amount of the verdict.[3]

■ ■ At trial defendant disputed Mildred Corcoran's claim that she

---

[1] See, Strong v. Shefveland, 249 Minn. 59, 81 N. W. (2d) 247; Annotation, 18 A. L. R. (3d) 428.

[2] See, Carpenter v. Nelson, 257 Minn. 424, 101 N. W. (2d) 918.

[3] See, Kroeger v. Lee, 270 Minn. 75, 132 N. W. (2d) 727.

had slipped at the place on the platform which she specified. He also contended that the patch of water-covered ice on which she claimed that she had fallen was not at the place designated by her testimony but was at a point some 4 feet away. The difference is significant because, had defendant's testimony with respect to the location of this water-covered ice been correct, it would have been out of the line of travel which plaintiff claimed she followed as she proceeded from defendant's store to a laundromat located nearby.

At a deposition taken in July 1965, John Corcoran, the husband of the injured plaintiff, testified that he was in defendant's store when plaintiff Mildred Corcoran fell on the platform adjacent to it. Informed of the fact that she had slipped and fallen, and familiar with the importance of prompt investigation by reason of his experience as a law-trained insurance adjuster, he had taken pictures of the place of the accident preserved in the form of "slides" which he then had in his possession. No amplification is needed to demonstrate the significance of a picture of the accident site in a case where both the place of the fall and the condition of that place were in critical dispute.

Defendant's attorney, in apparent recognition of the importance of these pictures, requested the opportunity to examine them. He was told that he could do so. Letters written by him to plaintiffs' attorney in September 1965, December 1965, and September 1966 requesting the pictures brought no response. Defendant's attorney demanded the pictures by interrogatories submitted to plaintiffs' attorney in February 1967 without any result except the response, "Improper question." At about this stage plaintiffs' attorney was informed that the pictures had been lost and were not available for use by anyone.

If plaintiffs or any person acting for them had deliberately destroyed these pictures in an effort to obliterate essential testimony, we would, at the very least, grant a new trial. We do not think that the plaintiff, having disclosed the existence of the pictures at the time of deposition taken in 1965, would then destroy this evidence or that any other person would deliberately do so. We believe that the trial court analyzed this phase of the matter correctly when it said:

"It is strange that the slides were lost but it is not incredible. It is much more difficult to believe that attorneys, officers of the court, under oath to 'use no falsehood or deceit' * * * would suppress evidence, the existence of which they had once revealed.

"There had been a long time, February 1959 to June 1965 to appraise the evidentiary worth of the slides. Had there existed culpable intent to conceal them, it is highly unlikely that their existence would have been disclosed in the June, 1965 interrogatory answer. Had there been an intent to conceal, then was the time to commence concealment, perhaps by claiming loss before that time."

Although we think that the instruction requested by defendant with respect to the inference to be drawn from plaintiffs' failure to produce these pictures might well have been given under the peculiar circumstances of this case, we cannot believe that the failure to give the instruction requested was so prejudicial as to require a new trial. If the pictures were actually lost as the trial judge believed and we accept, a new trial would not yield the missing evidence. We think it unlikely that the instruction requested by the attorney for the defendant, if given, would add anything to the impact of permissible argument on this point.[4] We are satisfied that if the jury which tried this case felt that plaintiffs had done anything which resulted in the intentional destruction of significant evidence, or had failed without adequate excuse or justification to produce that which was available on a critical point in the case, they would not have returned the verdict which they did return. Our reluc-

---

[4] Defendant's counsel argued as follows: "Some pictures were taken an hour after the accident, and those pictures were present and available in the hands of opposing counsel on the 23rd day of July, 1965, at which time in the presence of the plaintiffs I asked and opposing counsel agreed to give me copies of those pictures, and I am still waiting for them. Now, I don't know how to say this, and I don't know what you are going to conclude from it. One thing we do know, that it's mighty, mighty unfortunate that they are not here; and I hope that opposing counsel doesn't tell me I'm trying to accuse somebody of suppressing evidence. I don't know what happened to them, but I do know that they were available on that date, and his lawyer promised to give me a copy, and I didn't get them. Now, that I do know. Beyond that I don't."

tance to reverse upon this ground is fortified by the absence of any evidence in the record telling us what the pictures would have disclosed had they been available.

■ ■ There is no doubt that the application for life insurance made by Mildred Corcoran would have been useful to defendant's attorney at trial for purposes of impeachment because in it she disavowed the existence of disabling injury of the kind now claimed to be attributable to the accident. But the life insurance application which finally reached the hands of the defendant's attorney *after* the trial was not in the possession of the plaintiffs. It was in the files of the insurance company and would have been available to the defendant before trial if timely procedures to secure it had been employed. Two years elapsed between the time that the defendant became aware of the existence of this insurance application and the time that he instituted formal proceedings to secure it.[5] In the meantime, the case was on the calendar for trial and had been continued several times. In retrospect, it is possible that the continuance of the trial until this insurance application reached defendant's hands would have been preferable. But we do not believe that the contents of this application are of sufficient significance to justify a retrial of this matter in light of the delays which occurred between the time the existence of it was disclosed and the time that a formal effort was made to secure it.[6]

Affirmed.

---

[5] At the July 1965 deposition of Mrs. Corcoran, she stated that she was checked by Dr. Fisketti, an insurance doctor, for the purpose of taking out an insurance policy. Mrs. Corcoran did not know the name of the company from which she bought the insurance, but she said that "Jack [her husband] can tell you that."

[6] See, Ford v. Kline Oldsmobile, Inc. 274 Minn. 284, 143 N. W. (2d) 209; Kate v. Kate, 234 Minn. 402, 48 N. W. (2d) 551.