**In re the WELFARE OF M.S.M.**

**No. C2–85–2206.**

Court of Appeals of Minnesota.

May 13, 1986.

Michael S. MacDonald, St. Paul, for M.S.M.

John S. Connolly, St. Paul, for M.S.M.'s father.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Robert W. Kelly, Washington Co. Atty., Stillwater, for Washington County.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant M.S.M. was charged by delinquency petition with two counts of first degree criminal sexual conduct with four-year-old T.K. and five-year-old M.K. The court adjudicated M.S.M. delinquent and

placed M.S.M. under the care and custody of the Washington County Department of Court Services for residential placement at a treatment facility. The trial court further ordered M.S.M. and/or his parents to reimburse the county for the services of court appointed counsel and to pay certain costs. The trial court also denied M.S.M.'s motion for a new trial. M.S.M. appeals.

## FACTS

In the fall of 1983 M.S.M. and his parents moved into a house across the street from M.K. and T.K. The two families became fairly well acquainted, and in the spring of 1984 M.S.M. occasionally babysat M.K. and T.K. In June 1984 five-year-old M.K. began to complain of a burning sensation while urinating, and her mother observed a redness on her crotch and slightly enlarged vaginal opening. M.K.'s mother questioned her about sexual contact, but M.K. denied that anyone had touched her.

On the evening of September 4, 1984, M.S.M. babysat M.K. and T.K. for approximately one hour at his house. Later that evening, M.K.'s mother gave her a bath, and M.K. complained again about a burning sensation and complained of pain, pointing to her vagina. M.K.'s mother noted that M.K.'s vagina was red and open, and that there was a scratch in that area.

M.K.'s mother suggested to M.K. that diapers were the cause of the pain, and that perhaps they should be replaced with towels. M.K. spontaneously replied that "it's not the Pampers. [M.S.M.] put his finger in there," and pointed to her vagina. M.S.M. characterizes M.K.'s reply as an attempt to divert her mother's attention away from the threatened loss of diapers (M.K. was a bedwetter) by changing the focus of her mother's attention through the use of a statement implicating M.S.M. After M.K.'s father arrived on the scene, M.K. repeated what M.S.M. had done. M.K. added that M.S.M. had her touch and lick his penis and had showed her magazines with pictures of nude women that he kept in his bedroom.

On September 7, 1984, a child protection worker visited with M.K. at M.K.'s home. Employing a coloring book designed to aid children in describing good and bad touches, the child protection worker talked with M.K. M.K. reported that M.S.M. had given her a "red flag" touch; she colored in the genital area of a figure to indicate where M.S.M. touched her. M.K. stated that the touching occurred at M.S.M.'s house while T.K. and M.S.M.'s brother played in another room. M.K. repeated what happened, adding that M.S.M. had sharp fingernails and had scratched her.

On September 10, 1984, M.K. was examined by a medical doctor specializing in child abuse. M.K. reiterated her story, and also described M.S.M. as having put his penis in her mouth and touching her vagina and anus with his penis. The doctor testified that M.K.'s vaginal opening was wider than normal for a five-year-old, and that in her opinion M.K. had been vaginally penetrated. The doctor concluded that M.K.'s physical examination was consistent with what M.K. told her occurred.

On the way home from the doctor's office, M.K. reported to her mother that M.S.M. had told T.K. a secret. M.K. refused, however, to reveal the secret. Later that evening, T.K. denied knowing any secret, but then told his parents that M.S.M. had threatened to kill his parents if T.K. told them what M.S.M. had done. Both M.K. and T.K. stated that M.S.M. showed them a gun with bullets, which M.S.M. kept in his bedroom closet. On further questioning, T.K. told his parents that M.S.M. had put his penis on T.K.'s butt, "peed" in it, and penetrated him with his finger.

The same doctor who examined M.K. examined T.K. on September 21, 1984. In the doctor's opinion, T.K. was sexually abused in the manner described.

M.S.M. denied any sexual contact with M.K. in an interview with the deputy. Upon learning of the allegations against him, M.S.M. responded that M.K. was lying, although M.S.M. admitted having two *Playboy* magazines in his bedroom. M.S.M. explained that M.K. had found the

magazines in his bedroom. In late September authorities searched M.S.M.'s bedroom pursuant to a warrant, and seized four toy guns from his bedroom closet.

In late October and early November 1984, M.K. and T.K. were interviewed on videotape by the child protection worker and the deputy. After a pre-trial hearing, the trial court determined that the videotaped interviews and the children's statements were admissible at trial.

Trial was held in the latter part of June 1985. M.K. and T.K. were found to be competent witnesses, and both testified at trial as to what M.S.M. allegedly did to them. M.S.M. also testified, confirming that he babysat T.K. and M.K. on September 4, 1984 but that he never had sexual contact with the children or threatened them. In addition, the videotaped interviews were received into evidence.

Several events occurred at trial that are relevant on appeal. First, the sheriff's deputy referred to a lie detector in response to four questions by the defense and one question by the prosecutor. Second, because defense counsel failed to disclose to the prosecution the results of psychological testing on M.S.M., the court sustained the prosecution's objection to the introduction of the psychological assessment as a sanction for a violation of discovery. The defense's offer of proof showed that, according to the test results, M.S.M. was not capable of sexually abusing children.

A third event occurred toward the end of respondents' cross-examination of the appellant's expert when M.S.M.'s counsel requested a recess at 5:30 p.m. so she could pick up her child from daycare. The trial court denied her request. When a second request was denied, defense counsel and M.S.M. left the courtroom. The trial court permitted the cross-examination to be completed in their absence. Before proceeding with trial on a subsequent date, however, defense counsel was given the opportunity to review a tape of the cross-examination and make objections. In a subsequent written order, the trial court concluded that the evidence elicited during the absence of M.S.M. and defense counsel was cumulative and not determinative of any of the issues before the court.

On July 1, 1985, the trial court issued its order finding M.S.M. guilty of two counts of first degree criminal sexual conduct. *See* Minn.Stat. § 609.342, subd. 1(a) (1984). In the dispositional order of October 29, 1985, the trial court: denied M.S.M.'s motion for a new trial, which was not based on any affidavits or legal documents; placed M.S.M. under the care and custody of the Washington County Department of Court Services for residential placement at Boys Totem Town, a treatment facility; and ordered M.S.M. and/or his parents to reimburse the county for attorney's fees, expert witness fees, transcript costs, and investigation expenses totaling $3,191.00. M.S.M. appeals.

## ISSUES

1. Was M.S.M. deprived of his right to counsel when the trial court permitted the continuation of cross-examination of M.S.M.'s expert witness after M.S.M. and his attorney voluntarily left the courtroom?

2. Was M.S.M. deprived of a fair trial because of the cumulative effect of alleged errors occurring during trial?

3. Did the trial court abuse its discretion in requiring M.S.M. and/or his parents to reimburse the county for services rendered by court appointed defense counsel and other expenses?

## ANALYSIS

### I

The right to assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *See Herring v. New York*, 422 U.S. 853, 856, 95 S.Ct. 2550, 2552, 45 L.Ed.2d 593 (1975). *See also* Minn. Const. art. I, § 6. Furthermore, the rules of the juvenile court provide that children have a right to be represented by counsel. *See* Minn.Stat. § 260.155, subd. 2 (1984); Minn.R.Juv.Ct.

4.01, subd. 1. M.S.M. argues he was denied his constitutional and statutory right to counsel when the trial court continued the cross-examination of his expert witness after he and his court-appointed counsel left the courtroom.

The trial court concluded that because M.S.M.'s attorney reviewed a tape recording of the part of the proceeding she missed and was given the opportunity to recall the witness, M.S.M.'s case was not damaged by the continuation of the proceeding in her absence. While the court found that M.S.M.'s attorney's conduct in this instance was unwise and unprofessional, it did not prejudice the case.

The state argues that the conduct of M.S.M.'s counsel in leaving the court proceedings did not constitute a per se deprivation of the right to counsel that "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The state emphasizes that M.S.M.'s counsel was in no way excluded from the hearing, but instead voluntarily chose to leave proceedings that were in progress. The state adds that any potential prejudice to M.S.M.'s case was avoided by permitting counsel the opportunity to listen to the tape recording of the proceedings continued in her absence and by giving her the opportunity to recall the expert.

■ Under the circumstances, we think the trial court should have adjourned for the day when M.S.M.'s counsel made such a request, especially in light of the conflicting allegations that she had notified the court of her time conflict prior to the hearing. Generally, however, it is the duty of counsel to be present at all stages of the trial of a case. *See VonEnde v. Marxen*, 280 Minn. 24, 27, 157 N.W.2d 525, 527 (1968). *See also Hudson v. Minneapolis, L. & M. Railway Co.*, 44 Minn. 52, 54, 46 N.W. 314, 315 (1890) ("it is the duty of the counsel to remain in, or be represented at, the court during its sessions until the trial is ended"). The trial court stated at the time it denied the request for adjournment that it wanted to continue on and complete the cross-examination of M.S.M.'s expert because of the court's limited time to hear the case and for reasons of convenience to the witness. The Minnesota Supreme Court has stated that:

> [b]earing in mind the heavy schedule of trials, the court, in proper exercise of its discretion, could deny an adjournment which if granted would unreasonably extend the length of trial and disrupt the orderly disposition of pending cases.

*Ford v. Kline Oldsmobile, Inc.*, 274 Minn. 284, 287, 143 N.W.2d 209, 211 (1966). Thus, we conclude that the trial court was within its discretion in denying the request of M.S.M.'s counsel to adjourn for the day.

■ In addition, we note that the trial court found the cross-examination conducted in the absence of M.S.M. and his counsel to be cumulative. This, coupled with the fact that the cross-examination was not prejudicial to M.S.M.'s case, lends support to our conclusion that the trial court did not deprive M.S.M. of his right to counsel.

## II

M.S.M. asserts that the cumulative effect of three alleged errors occurring at trial deprived him of his right to a fair trial.

1. *Reference to the Lie Detector* —M.S.M. contends that the prosecution witness improperly made reference to a lie detector. M.S.M. admits, however, that his counsel at trial failed to object or request a mistrial.

The state contends that M.S.M., not the state, elicited testimony concerning a lie detector. In any event, the state contends this issue is not properly before this court because it was not raised in the trial court or in the motion for a new trial. The state adds that the references to the lie detector did not prejudice M.S.M. because it was not clear he ever took a polygraph, and no polygraph results were ever alluded to at trial.

2. *Admissibility of M.S.M.'s Psychological Assessment*—Because M.S.M. failed to

disclose the results of psychological testing on M.S.M., *see* Minn.R.Juv.Ct. § 24.02, subd. 1(B), the trial court refused to admit them into evidence as a sanction for violation of discovery rules. M.S.M. asserts that the court should have used a sanction that did not prejudice M.S.M.'s case.

The state notes that the prosecutor made a formal request for disclosure more than six months prior to trial, which disclosure M.S.M. failed to provide. The state contends sanctions for the violation of discovery rules are within the discretion of the court, and here the trial court did not abuse its discretion.

3. *Extrajudicial Statements of M.K. and T.K.*—M.S.M. contends that he was denied the right of confrontation under the six and eighth amendments through misapplication of Minn.Stat. § 595.02, subd. 3 (1984) because the trial court admitted into evidence ten statements made by M.K. and T.K. out-of-court. According to M.S.M., the trial court improperly admitted the statements of the children to four witnesses and the statements of the children on videotape for a total of ten misapplications of section 595.02, subd. 3. In addition, M.S.M. argues that the trial court placed undue weight on the videotaped statements by reviewing them after the conclusion of the hearing. M.S.M. also argues that after nine months, since the time from the alleged offense, the memories of M.K. and T.K. faded.

The state asserts that the trial court conducted a hearing and found that all the section 595.02, subd. 3 criteria were satisfied. Allowing the children's extrajudicial statements into evidence was thus correct. Because the children testified at trial and were subject to cross-examination, the state concludes that M.S.M. was not denied the right to confrontation.

Based on the cumulative effect of these alleged errors, M.S.M. contends he was denied a fair trial. *See State v. Jahnke,* 353 N.W.2d 606, 611 (Minn.Ct.App.1984).

■ We find these are not errors at all. The record contains no evidence that M.S.M. ever took a polygraph test. Furthermore, no objection was made at trial, and M.S.M. did not raise this allegation in his motion for a new trial. A party is not allowed to raise an issue for the first time on appeal. *See Morton v. Board of Commissioners,* 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974).

■ Sanctions for discovery violations are within the discretion of the trial court. *State v. Lindsey,* 284 N.W.2d 368, 373 (Minn.1979). Here the trial court's refusal to admit into evidence the results of a psychological assessment was permissible under the circumstances and does not constitute an abuse of discretion.

■ As to the extrajudicial statements of M.K. and T.K. contained in the videotape, the trial court was satisfied that the criteria of section 595.02, subd. 3 were met. Thus, the trial court did not err in admitting the children's extrajudicial statements into evidence. The record does not disclose that he was denied the right of confrontation.

M.S.M. was not denied a fair trial.

### III

■ In juvenile proceedings in which the court has appointed counsel for the juvenile, "the court may inquire into the ability of the parents to pay for such counsel's services and, *after giving the parents a reasonable opportunity to be heard,* may order the parents to pay attorneys fees." Minn.Stat. § 260.251, subd. 4 (1984) (emphasis added). When parents can afford to retain counsel but have not retained counsel for the child and the child cannot afford an attorney, the child is entitled to representation at public expense. Minn.R. Juv.Ct. § 4.01, subd. 3(B). A court may order, after giving the parents an opportunity to be heard, "that service of counsel shall be at the parent(s)' expense in whole or in part depending on their ability to pay." *Id.*

The trial court determined that both of M.S.M.'s parents are gainfully employed and possess the resources to contribute to

the payment of expenses and attorney's fees expended in the defense of M.S.M. and ordered M.S.M. and/or his parents to reimburse the county for $3,191.00.

M.S.M. argues the trial court did not provide a hearing and opportunity to be heard for his non-custodial parent, and that this omission constitutes a statutory violation and a deprivation of the constitutional right to due process. In addition, M.S.M. contends the court failed to provide notice of the pendency of the case pursuant to Minn.Stat. § 260.135, subd. 2 (1985) to his non-custodial father *prior to the appointment of counsel,* thereby denying his non-custodial father the opportunity to employ the counsel of his choice.

The State counters with several arguments. First, M.S.M. did not raise this issue before the trial court at anytime prior to appeal; therefore, M.S.M. waived the issue. Second, the reimbursement issue arose after the adjudicatory order of July 1, 1986, and was raised in neither the August 23rd nor October 9th hearings. It was after the October 9th hearing that the trial court ordered reimbursement. Because M.S.M. has not provided transcripts of the two post-trial hearings, the state contends the record is inadequate for purposes of review. On the record that exists, the state asserts that both of M.S.M.'s parents were present at the two hearings.

Based on the record, we must affirm the trial court.

### DECISION

M.S.M. was not deprived of his right to counsel when the trial court permitted the continuation of cross-examination of his expert witness after M.S.M. and his lawyer voluntarily left the courtroom. M.S.M. was not denied a fair trial by the cumulative effect of three alleged errors. The trial court did not abuse its discretion in requiring M.S.M. and/or his parents to reimburse the county for services rendered by court-appointed defense counsel and other expenses.

Affirmed.